## RICHARD CHARLES REHM V. THE STATE.

No. 17254.   Delivered February 13, 1935.

The opinion states the case.

*Henry Juergens, Eddie Roark,* and *Jno. A. Ballowe,* all of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Conviction is for murder, the punishment assessed at death.

The party killed was L. J. Bell, a police officer of the City of Dallas.

The disposition which we find it necessary to make of the case calls for only a concise statement of the facts.

The record shows that appellant went into the office of a Federal officer in Dallas and introduced himself, making inquiry if they had anything there against him. It seems the Federal officer had no warrant for his detention, and that no complaint had been filed charging Rehm as a fugitive from another state, but said officer over objection, held him under some instructions he had received. Appellant was turned over by said officer to the city authorities and confined in the city jail. He was afflicted with gonorrhea, and asked for a doctor. The Assistant City Health Officer, discovering his condition, advised that they had no facilities in the city jail for treating him, and that he would have to be transferred to the county

jail where he would be interned and treated. The Assistant City Health Officer issued a warrant directed to any police officer in the city, directing that appellant be taken to the health office in the Criminal Courts' Building in order to determine whether it might be necessary to quarantine him for treatment for such disease. Bell was the driver of a patrol wagon, and appellant was in his custody by virtue of the warrant just mentioned. When they arrived at the Criminal Courts' Building appellant escaped and was overtaken by Bell in a garage, and in attempting to again subject him to custody appellant and Bell engaged in a scuffle over the officer's pistol, during which the pistol was discharged and the officer was killed. It was the State's contention that appellant gained possession of the officer's pistol during the scuffle and intentionally shot the officer to effect his escape. It was appellant's testimony that he thought the officer was going to do him violence with the pistol, and in an effort to prevent this he engaged in a scuffle with the officer and got hold of the barrel of the pistol and without any volition on his part the pistol was discharged while he had hold of the barrel of it, said shot resulting in the death of the officer.

The first three bills of exception in the record bring forward complaint at argument of the district attorney. Our State's attorney has confessed error under the certified facts in said bills. The first argument complained of is as follows: "This defendant kills a police officer, takes his gun, hi-jacks four or five automobiles to effect his escape. Is that not the same type of criminal as the Barrows, Hamilton and Dillinger?"

This argument was objected to as being unwarranted and prejudicial. It is certified as a fact in the bill that the Barrows referred to were Clyde and Buck Barrow, who were outlaws reared within two miles of the Dallas County courthouse, and whose criminal careers were well-known to every member of the jury; that both of them had been killed by officers of the law, and their remains returned to Dallas for interment. It is also recited as a fact that the Hamilton referred to was Raymond Hamilton, who was another Dallas criminal product, and a companion of Clyde Barrow, and was also well-known to the jury; that the Dillinger referred to was John Dillinger, who had been known and listed as public enemy number one in the United States. It is further recited as a fact that: "* * * such comparison (by the district attorney in his argument) of defendant with such known outlaws and killers and the three mentioned in said argument was of such a vicious,

insidious, highly prejudicial and inflammatory nature that the harmful effect thereof could not be withdrawn or obliterated from the minds of the jury, and was so considered and mentioned by said jurors during their deliberations."

It was further shown in the bill that by the testimony of jurors upon the hearing of the motion for new trial that it was discussed in the jury room that Raymond Hamilton had just received the death penalty upon his trial at Huntsville. How this information reached the jury is not developed. It is further shown by qualification to the bill that when objection to the argument was interposed the trial court immediately reprimanded the district attorney and told the jury not to consider such statements; that they should not have been made and that the jury should pay no attention to them.

The second bill of exception complains of the following language of the district attorney in argument: "This man, gentlemen, is a three-time escaped convict, according to his own testimony; he killed a police officer trying to effect another escape; you don't know how many men he has assaulted."

This argument was objected to on the ground that the same was a statement of a fact not in evidence and was of highly prejudicial and inflammatory nature and was an attempt to make the jury believe defendant had assaulted other persons. The court again instructed the jury not to consider such remarks for any purpose. It is then certified as a fact in the bill that: " * * * said statement was wholly unsupported by the evidence and was entirely outside the record. Neither was there any testimony that defendant was a three-time escaped convict, the testimony being he escaped from one reformatory and one prison."

It is further certified in said bill: "Due to the fact that such argument was made to the jury by the district attorney in his closing argument, and when the defendant had to remain silent and could not answer, in leaving as a parting word to the jury that the defendant was guilty of other crimes of violence, unquestionably resulted in great injury to the defendant."

The third bill complaining of argument of the district attorney reflects the following incident. While addressing the jury the district attorney held in his hand and waved before the jury a purported warrant from the State of New York, and said, "this is what they were going to take him back to New York on." Objection was interposed that the same was a statement by the district attorney of a fact not in evidence

before the jury, and was prejudicial to the rights of appellant. The following certificate of fact is found in such bill with reference to the argument last quoted: "In explanation of this bill it is to be remembered that on two or three different occasions during the progress of the trial the State attempted to offer a purported warrant of some character in evidence, which charged the defendant with being a parole violator from the State of New York, the court had properly sustained the objections of the defendant and refused to admit same in evidence, and had been consistent in his ruling throughout the trial of the case, but that in tyrannical and contemptuous disregard of the court's persistent ruling, the district attorney indulged in the conduct and statements herein mentioned; that said conduct and argument was so utterly without the pale of proper presentation and summation of the State's case that the effect, detrimental influence and harmful consequence to this defendant was * * * indelibly placed upon the minds of the jurors to such an extent that the defendant was deprived of and not awarded that kind and character of fair, impartial and just trial guaranteed to every man charged and tried for crime."

This court has frequently pointed out that large discretion is, and necessarily must be, lodged in the trial court, and that certificates of fact by him in bills of exception are ordinarily binding on this court. On that account attention has been frequently directed to the care which should be exercised in approving bills of exception in order that what may really have been grounds of objection only do not appear as certificates of fact. We again call attention to the trial judges to such important distinction. When bills are drawn and approved by the court containing recitals of fact such as are found in the bills in question here this court has no option but to reverse the judgment and remand the cause. McKee v. State, 116 Texas Crim. Rep., 232, 34 S. W. (2d) 592; Green v. State, 44 S. W. (2d) 726; Traylor v. State, 47 S. W. (2d) 310. In the latter case we said: "If the trial judge thought the argument was as bad as certified, a new trial should have been granted, and the expense and delay of an appeal avoided." See also, Griffin v. State, 50 S. W. (2d) 812; Horton v. State, 61 S. W. (2d) 843; Jones v. State, 64 S. W. (2d) 961; Bryan v. State, 70 S. W. (2d) 715; Money v. State, 71 S. W. (2d) 1101; Miller v. State, 36 S. W. (2d) 158; Lemons v. State, 75 S. W. (2d) 878.

In appellant's motion for new trial misconduct of the jury is claimed regarding their experiments with the officer's pistol

which had been introduced in evidence and taken to the jury room when they retired to consider their verdict. It is recited in the bill that no testimony had been offered during the trial showing that the type of revolver in question could not have been accidentally discharged, and that had such question been raised during the trial appellant would have immediately offered expert witnesses to show that such type of revolver could have been accidentally discharged in the manner claimed by appellant. The testimony of the jurors disclosed that when a discussion arose in the jury room with reference to whether the pistol had been accidentally discharged, they determined that matter by several demonstrations, one of the jurors taking the gun and handling it as nearly as he could like appellant claimed it was handled, and another one of the jurors representing the police officer, and from such demonstration it was determined by the jurors that the type of pistol in question could not have been discharged accidentally. We do not discuss the point at length as the case must be reversed for the reasons heretofore set out, but the demonstration with the pistol in the jury room raises a question as to whether the jury mis-used the pistol in the manner shown by their testimony. Of course, the pistol was properly in evidence and it was not error for the jury to take it with them in their retirement in considering the case. The complaint urged is that they mis-used the pistol to appellant's injury. Upon another trial such an incident, if likely to happen again, could be easily avoided.

A number of objections were urged to the court's charge. We have not been favored with a brief from counsel representing appellant, therefore we do not have the benefit of the views of counsel with reference to the matter, hence pretermit a discussion of any question regarding the instructions of the court.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*