George Dewey BROWN, III, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–97–0475–CR.

Court of Appeals of Texas, Amarillo.

Oct. 8, 1998.

Gerald D. McDougal, Law Offices of Gerald D. McDougall, Amarillo, for appellant.

James Farren, Randall County District Attorney, Canyon, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

QUINN, Justice.

George Dewey Brown, III appeals from a judgment convicting him of aggravated kidnapping. Raising two points of error, he contends that the trial court erred in 1) admitting, during the guilt innocence phase of the trial, evidence of "extraneous acts which were not relevant to the allegations in the indictment" and 2) permitting the prosecutor to compare "appellant to various heinous criminals" and make "other, improper appeals to the jury." We affirm in part and reverse in part.

### Background

The events which ultimately resulted in appellant's conviction arose when appellant violated a protective order preventing him from appearing at the home of his wife and children. After the police arrived, appellant refused to leave. Effort was then made to sway him to surrender. To that end, a negotiator for the local sheriff's department appeared at the scene and began communicating with appellant. During the ensuing communications, appellant constantly reiterated his refusal to leave and threatened harm should force be used to remove him. The subjects of his direct and indirect threats of harm included not only the peace officers and negotiator but also his own wife and children. And, in an effort to bolster the sincerity of his threats, he alluded to his criminal record and the various violent acts described therein as proof that he could be violent. That record included, among other things, an assault upon a police officer and one upon his wife.

Needless to say, the conversations between the negotiator and appellant were taped. In addition to containing the foregoing dialogue,

the tapes also captured descriptions of appellant's activities while in the mobile home. He had nailed the front door shut and wired the backdoor to keep it closed. So too did he maintain the children within his immediate presence. Indeed, as the siege continued, he had them sleep next to the sealed front door (a potential entry path of the officers) while he lay on furniture by them. After many hours, however, officers succeeded in extricating appellant through the use of force.

### Point of Error One

In his first point, appellant complains of the court's decision to admit evidence that he assaulted his wife with a curling iron and that he previously abducted or held his children hostage. The decision allegedly contravened Texas Rules of Criminal Evidence 403 and 404(b); that is, the State allegedly failed to give him reasonable prior notice of its intent to offer the evidence and the prejudicial effect of same outweighed its probative value.[1] We disagree and overrule the point.

*Standard of Review*

Questions regarding the court's decision to admit or exclude evidence are reviewed under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim.App.1991). Whether the court abused its discretion depends upon whether the ruling fell outside the zone of reasonable disagreement. *Id.* at 391–92. It cannot be said that abused discretion occurred if the ruling can be upheld on any valid basis, though it was not offered below.

*Application*

a. *Prior Abduction or Hostage Evidence*

■ As to the matter of providing reasonable notice of the State's intent to offer the extraneous offenses, we note that appellant raised that issue by objecting to the offenses appearing on the tapes recorded by the negotiator. Indeed, he wanted the trial court to review those tapes in camera and excise those portions for which no notice was given. Yet, the extraneous act involving the prior

abduction or hostage situation went unmentioned on the tapes. Instead, it was first disclosed by the negotiator during his direct testimony at trial. And, when the negotiator discussed it, appellant raised no objection. Not until the State returned to the subject during the negotiator's later testimony was complaint voiced. Moreover, the objection which was eventually asserted mentioned nothing of the failure of the State to notify appellant of its intent to offer the particular evidence. Given that the evidence in question was previously admitted without objection and the latter objection said nothing of the notification requirement, appellant did not preserve his complaint about the lack of notification *vis-a-vis* the hostage evidence. *See Bell v. State*, 938 S.W.2d 35, 54–55 (Tex. Crim.App.1996), *cert. denied*, — U.S. —, 118 S.Ct. 90, 139 L.Ed.2d 46 (1997) (holding that the legal theory presented on appeal must be the same as that urged before the trial court).

Nor did he preserve his complaint that the admission of the hostage evidence violated Rule 403. Again, when it was first mentioned to the jury, no one objected. Since the evidence was previously admitted without objection, appellant waived complaint about any subsequent discussion of it. *Hernandez v. State*, 914 S.W.2d 226, 233–34 (Tex.App.— Waco 1996, no pet.).

b. *Evidence of Prior Assault on Wife*

■ As to the evidence regarding appellant's assault upon his wife, we note that the tapes captured appellant's reference to his prior assaults. Coupled with that reference was his allusion to his prior criminal record and his belief that the negotiator knew about it. And, according to the negotiator, the criminal record to which appellant alluded described an assault he had committed upon his wife with a curling iron. So, it can be argued that by mentioning his previous assaults, criminal record, and the negotiator's knowledge of that record, appellant was discussing the assault upon his wife. Given this, we conclude that he preserved, in a very

---

1. Contrary to the representations contained in the State's brief, appellant did object to admission of the evidence in question on the ground that the State allegedly had not notified him of its

intent to tender same into evidence. Furthermore, the court overruled the objection. So, the dispute was preserved. Tex.R.App. P. 33.1(a).

roundabout way, his complaint regarding the State's failure to provide prior notification under Rule 404 and feel compelled to address it. *See Cooper v. State,* 961 S.W.2d 222, 228 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (stating that one preserves error if the specific ground for the objection is apparent from its context).

As to Rule 404(b), it does require reasonable prior notification of the State's intent to admit evidence of extraneous crimes during its case-in-chief. However, the rule is not without exception. And, one such exception concerns evidence "arising in the same transaction." TEX.R. EVID. 404(b). If it so arises, then prior notification is unnecessary. In *Buchanan v. State,* 911 S.W.2d 11 (Tex. Crim.App.1995), the Texas Court of Criminal Appeals addressed what falls within that exception. There, it stated that the prior bad act must be "intermixed or blended ... or connected" to the act for which the appellant is being tried "so that they form an indivisible criminal transaction, such that full proof of one could not be given without showing the other." *Id.* at 15. In effect, the evidence must be necessary to the fact finder's understanding of the incident for which appellant is on trial to fall within the exception. *Id.* We conclude that this standard was met here.

At first blush, one could say that appellant's prior assault upon his wife had little relationship to the offense for which he was being prosecuted below. Yet, analysis proves otherwise. At the time the utterances were made, appellant was attempting to forestall his arrest. Towards that end he not only refused to leave the abode but endeavored to enhance his bargaining position. So, he referred to his prior criminal record and assaults, which included that upon his wife, to convince the negotiator not only that he was serious but also that he had the ability to carry out his threats. In other words, appellant invoked his prior record, including the assault, in an effort to maintain some semblance of control over the officers and the four hostages within the trailer. Given that, the evidence of the assault was intertwined with and indivisible from the incident resulting in his conviction for kidnap-ping. It constituted an integral part of his overall scheme to perfect and maintain the kidnapping. Consequently, the evidence fell within the boundaries of the "same transaction" for purposes of Rule 404(b), and the State was not required to provide appellant with prior notice of its intent to offer it.

### c. *Rule 403*

Appellant's last argument under point one involves Rule 403 of the Texas Rules of Evidence. There he posits that the court erred in admitting evidence of the prior " 'hostage' " situation since its prejudicial effect outweighed its probative value. By referring to the " 'hostage' " situation, we do not know whether he is alluding to the assault upon his wife or the time which he allegedly abducted his children. Indeed, he made no effort to differentiate the two in his brief. Nevertheless, if his argument encompasses the prior abduction of his children, then we find that the objection was waived. Again, that incident was first mentioned not in the tapes but in the live testimony of the negotiator, and when initially raised, appellant did not object to it.

As to the matter of the prior assault upon appellant's wife, we have discussed how appellant used reference to that incident as part of his scheme to prolong the kidnapping and thwart the officers. Thus, the evidence was highly relevant to the legitimate prosecution of the kidnapping charge. That it may also be seen as evidence of appellant's character for violence and criminal misconduct does not persuade us to conclude that it should have been barred from trial. In sum, every time appellant objected on the basis of Rule 403, the trial court assured him that it was weighing the probative value against the prejudicial effect of the evidence in question. And, upon considering that circumstance along with the factors used in analyzing a Rule 403 objection, *see Lane v. State,* 933 S.W.2d 504, 520 (Tex.Crim.App.1996) (stating those factors), we cannot say that the court abused its discretion in striking the balance against appellant and admitting the evidence in question.

### Point of Error Two

In his second and final point, appellant asserts that the prosecutor "exceeded the allowable limits of argument" during his summation in the punishment phase of the trial. Though the purported excesses are not clearly specified in his brief, we nevertheless construe them to involve 1) the statement that " 'somebody may die' " unless appellant is incarcerated, 2) an allusion to appellant's decision to have the jury assess punishment, and 3) a comparison of appellant with notorious murderers. For the reasons stated below, we sustain the point.

### a. " 'Somebody may die' "

■ As to the statement that unless appellant is incarcerated, someone was going to die, appellant did not object to it. Thus, any complaint about it was waived. *McFarland v. State,* 928 S.W.2d 482, 510 (Tex.Crim.App. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997).

### b. Comment on Selection of Jury to Assess Punishment

As to the comment upon appellant's decision to have the jury assess punishment, the record reflects that the prosecutor began his closing argument by uttering:

> What—what's happening at this stage of the trial is what's known as a hoodwink. The defendant, through his attorney, is attempting to hoodwink you. You see, the defendant, through his attorney, as you have always heard, has filed an election for probation, and has chosen to go to you for punishment. Now, he could go to the judge. He has that option. He can have—

Before the statement could be finished, however, appellant objected, contending that reference to his selection was irrelevant. After the court overruled the objection, the State continued with the following:

> The defendant has the option of going to the judge to decide what his punishment should be, or going to you. Now, he is well aware, as you heard from his attorney's questions, that this is a no nonsense judge. This is not a judge that you want to go back in front of unless you have to. And he knows the experience this judge

has in deciding cases. He knows the kind of attitude this judge has toward law enforcement. And, knowing that, he chose, instead, to come to you. You, who don't have the background, don't have the information that he has at his fingertips to make a decision in this case. But, with that in mind, we'll see whether or not his attempt to hoodwink you works.

■ Precedent holds that comment upon an accused's decision to have the jury, as opposed to the judge, assess punishment is not "reversible error" unless it conveys to the jury what punishment the judge would assess or suggests that there may exist other evidence outside the record which may be pertinent on the subject. *Schulz v. State,* 446 S.W.2d 872, 875 (Tex.Crim.App.1969). Here, the State did more than simply inform the jury that appellant had the option to have either the judge or jury assess punishment. It linked appellant's request for probation with the judge's purportedly stern views towards criminal conduct and law enforcement. Then it suggested that the judge had information available to him and relevant to the matter but which was unavailable to the jurors. The sum of these comments was, and is, a not so subtle insinuation that the court would deny probation were it assessing punishment. And, that crossed the line established in *Schulz.* The State attempted not only to indicate what the court would do but also suggested that other pertinent (though unavailable) evidence existed on the matter.

### c. Comparison to Murderers

As to the matter of comparing appellant to notorious murders, the following transpired:

> Prosecutor: I think the man is mentally ill. Every expert who has talked to him, however, agrees that he is legally sane, and responsible for his acts. That he knows right from wrong, he understands the nature of his acts and the consequences of his acts. But he apparently is mentally ill. Well, you know, so was *Jeffrey Dahmer,* who killed and ate people—

Defense Counsel: Your Honor, I object to him comparing my client to *Jeffrey Dahmer.*

Court: Overruled.

Defense Counsel: Your honor—

Court: Gentleman, this is strictly your opinion. It is not evidence. And I will overrule the objection.

\* \* \*

Prosecutor: His actions are not nearly as bad as *Jeffrey Dahmer's* actions. I don't dispute that. *Jeffrey Dahmer ate and killed* people. If there was anybody who was mentally ill, it was *Jeffrey Dahmer.* But he went to prison.

*John Wayne Gacy killed* forty young men and buried them in his house ... dressed like a clown, and he was loved. But he was very mentally ill. He went to prison.

*Ted Bundy* was very mentally ill, but he received the death penalty because he was still responsible for his acts. And the people in those cases—the juries in those cases—focused on the victims. However sorry they may have felt for *Ted Bundy,* because he was mentally ill, however sorry they might have felt for *Dahmer,* or *Gacy,* or lots of other people who have mental illness, they focused on the victims.

(emphasis added).

■ Comparing an accused or his acts to those of a notorious criminal is, according to the Texas Court of Criminal Appeals, an improper and erroneous interjection of facts not in the record. *Stell v. State,* 711 S.W.2d 746, 748 (Tex.App.—Corpus Christi 1986, no pet.) (comparing the accused to Lee Harvey Oswald); *see Rehm v. State,* 128 Tex.Crim. 59, 78 S.W.2d 983, 984–85 (1935) (comparing the accused's acts to those of Clyde Barrow and John Dillinger). Here, the State's comments are tantamount to comparing appellant and his defense to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy and the defenses they raised. Each of the three individuals to which he was compared was or is a notori-

ous serial murderer whose despicable acts remain fresh in the collective mind of the public. And, in arguing as it did, the State not only invoked the memory of the horrific crimes they committed but also effectively asked the jurors to punish appellant like they were punished, that is, by the assessment of imprisonment. This violated *Stell.*

### d. Harm

Because we find that at least two aspects of the State's closing argument were improper, it is incumbent upon us to determine harm. With the advent of the new rules of appellate procedure, the appropriate test is that explained in Rule 44.2. As stated therein, error of constitutional magnitude is not reversible unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R.APP. P. 44.2(a). All other errors are harmless if they did not affect the substantial rights of the accused. *Id.* at 44.2(b). Here, the error in question is not of constitutional magnitude; thus, we apply the test described in 44.2(b).

■ Rule 44.2(b) provides little guidance in assessing what affects a substantial right. The Court of Criminal Appeals has interpreted it as requiring a substantial and injurious effect or influence on the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Indicia useful in conducting this analysis include 1) the quantum of evidence appearing of record and supporting the jury's decision and 2) the emphasis placed upon the improper conduct or, stated differently, the number of times the State stressed the improper comment or evidence. *Id.* at 271–73; *Rodriguez v. State,* 974 S.W.2d 364, 370 (Tex.App.—Amarillo 1998, pet. filed). So too can one consider whether the prosecutor intended to inflame the jury through use of the tainted matter before the court could intercede. *Id.* Yet, these are not the only indicia which may be applicable. Others which tend to gauge the potential impact of the error on the minds of the jury can no doubt be divined, and it is conceivable that they could vary depending upon the type of error involved and the facts of the particular case. Indeed, the indicia discussed in

*Harris v. State*, 790 S.W.2d 568 (Tex.Crim. App.1989), also remain useful despite a change in the harmless error rule. They include, among other things, the source and nature of the error, the emphasis placed on it, potential collateral implications, and the likelihood the error would be repeated with impunity by the State if held harmless. *Id.* at 587.

■ Incidentally, nothing requires that the potential effect of each error be assessed individually. While the impact of a particular instance of error may be innocuous when viewed in a vacuum, it is conceivable that repeated error may eventually accumulate to a level depriving the accused of a fair trial, and that was the conclusion reached by the court in *Stahl v. State*, 749 S.W.2d 826 (Tex. Crim.App.1988). There the court noted that individual acts of misconduct may be ameliorated by an appropriate instruction; yet, those same improprieties may "escalate[ ] in to cumulative harm." *Id.* at 832. Thus, the cumulative effect of the various errors is also a factor worthy of crediting.

■ But, again, it must be remembered that irrespective of the factors which are applied, they must arise to the level of harm. That is, they must illustrate that the potential impact is more than slight. Otherwise, affirmance is required. *King v. State*, 953 S.W.2d at 271; *Rodriguez v. State*, 974 S.W.2d at 370.

■ Here, we have looked at the entire record. From it we find ample evidence not only supporting appellant's guilt but also the 60 year sentence levied upon him. Indeed, aggravated kidnapping being a felony of the first degree, Tex. Pen.Code Ann. § 20.04(c) (Vernon Supp.1998), appellant could have been sentenced to life or any term of years between 5 and 99. *Id.* at § 12.32. Moreover, the jury was judging him not for one but four instances of aggravated kidnapping, three of which involved children.[2] So too did the jurors hear evidence regarding his willingness to use violence when he believed the circumstances warranted it. His threats

against the police officers and negotiator illustrated as much.

Yet, the error arose immediately before the jury was to retire and deliberate. Thus, its potential effect was not as attenuated as it would have been had the misconduct occurred elsewhere. Furthermore, each act involved misconduct which the Court of Criminal Appeals had deemed wrongful long ago. The situation is not one in which the law was unclear or in which the act was arguably proper. Indeed, concerning the comment about appellant's opting to have the jury assess punishment, only one Court of Criminal Appeals decision could be found on the matter, that is *Schulz*, and the State informed the trial judge that it knew of the opinion when its conduct was questioned. So, it can be said that the State knew of the limitations imposed by *Schulz* but nevertheless exceeded them. Additionally, by the court permitting the State to continue its argument about why appellant opted as he did, the jury could have viewed the court's decision as a sign of imprimatur, that is, as a sign that it would have denied appellant probation had it been given the chance to decide punishment.

Furthermore, as to the matter of comparing appellant with notorious murderers, the State did not stop once its point was made by reference to the fact that Jeffrey Dahmer was imprisoned despite his alleged pleas of mental illness. Rather, the names of two other heinous murderers were invoked. Though this may have reinforced the State's point that individuals suffering from mental problems should or could be sent to prison, it can also be said that each additional comparison added to the incendiary and emotional effect the criminal acts of Dahmer, Gacy, and Bundy had on a reasonable juror's psyche.

In sum, the determination of harm is little more than a matter of educational guess. What the jurors *actually* thought persuasive or *actually* considered is seldom, if ever, available to us. So, we peruse the record to assess potentialities. And, in assessing the potentialities at bar, we are unable to say that the cumulative effect of each instance of

---

**2.** Four indictments were tried during the proceeding. Each related to an instance of kidnapping involving appellant's wife and three children.

misconduct was nil or only slight. It may be that appellant's acts merited a lengthy prison sentence but that is something which the jury below was to decide free of 1) suggestion about what the court would do if it were levying punishment and 2) allusion to several of the most notorious murderers in recent memory. Appellant is not entitled to a perfect trial, "but[ ] he is entitled to 'at least one tolerably fair....'" *Haddad v. State,* 860 S.W.2d 947, 953 (Tex.App.—Dallas 1993, pet. ref'd) (quoting *Brown v. State,* 168 Tex.Crim. 67, 323 S.W.2d 954 (1959)). Thus, we conclude that substantial rights of appellant were affected as per appellate Rule 44.2(b) and sustain the second point of error.

Accordingly, that portion of the judgment assessing punishment upon appellant is reversed. That portion of the judgment finding appellant guilty of aggravated kidnapping is affirmed. Finally, the cause is remanded for a new punishment hearing.