NO. 07-08-0314-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

OCTOBER 30, 2009
_____

PETER J. TELLO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-419,430; HONORABLE CECIL PURYEAR, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

A jury convicted appellant Peter J. Tello of forgery[1] and set punishment at twenty-four months in a state jail. Through thirteen issues, appellant complains that at the guilt-innocence phase of trial the court erroneously admitted evidence of several extraneous acts and offenses. The State concedes error on nine issues but argues the errors, including constitutional error, were not harmful.[2] Because we are unable to say beyond a

---

[1] Tex. Penal Code Ann. § 32.21(d) (Vernon 2003).

[2] In its brief, the State generally questions the sufficiency of some of appellant's objections to preserve error. We find appellant sufficiently called his complaints to the

reasonable doubt that the accumulated effect of the errors did not contribute to appellant's conviction, we reverse and remand for a new trial.

Background

Husband and wife, A.H. and V.H.,[3] ordered personalized bank checks by mail. When the checks did not arrive and their bank account debit card was declined they discovered unauthorized withdrawals from their account. They reported the situation to police.

About three months later, on September 20, 2007, a black Pontiac Sunfire automobile entered the drive-through line of a Lubbock area convenience store. The driver was male and the front seat passenger female. They ordered two cases of beer. The store attendant placed the beer in the vehicle. It appeared they did not have sufficient cash to pay for the purchase so the female began writing a check. The check she prepared was from the shipment ordered by A.H. and V.H. The attendant told the female the check would be electronically verified. When he stepped inside the store to process the check, the vehicle departed. The check was declined. As the vehicle drove away, the attendant noted its color, make, model, and license plate number. He telephoned police and an investigation followed.

---

attention of the trial court to preserve the claimed errors he now presents for our review. *See* Tex. R. App. P. 33.1(a).

[3] These complainants are identified herein by initials.

The vehicle description and license plate number led police to appellant's mother who explained that she loaned appellant her car. Later, a detective spoke with appellant. According to the detective, appellant initially denied knowledge of the September 20 event. When confronted with the information about the vehicle and that his mother told police she authorized his use of her vehicle, appellant recalled going to the convenience store. Appellant was indicted for forgery.

At trial, the State called the convenience store clerk who described the forgery. He identified appellant in a police photo lineup and in open court as the driver of the vehicle on September 20.

The State also called Marivel Saldana. Saldana, a convicted felon, and at that time under two pending indictments, denied any "deal" with prosecutors. She testified she met appellant at a nightclub three or four months before September 20. They began living together. Appellant one day told her, "'I've got a lick for you.'" According to Saldana, "lick" means a scam, an illegal scheme to obtain free beer. Appellant selected the convenience store as the target because, according to Saldana, he and a friend previously passed a check there and believed "it was a good lick." Saldana explained how she and appellant worked the deception in the store drive-through. They played the part of A.H. and V.H. since their names appeared on the check. They displayed cash when ordering beer, but not enough for the total. Saldana then began writing a check. The attendant accepted the check, telling them to wait for verification and a receipt. Saldana knew the check would be declined and without a word appellant drove away from the store. The check was admitted

in evidence. Saldana explained that some of the writing on the instrument was hers and some appellant's.

After the State rested, appellant testified in his defense. He acknowledged he and Saldana had a relationship. And on September 20 he met a female at a Lubbock bar but she was not Saldana. He did not know the woman's name. She asked for a ride to the convenience store and then home. He obliged. In the store drive-through, she ordered beer and paid by check. He did not recall the store attendant saying the check would be verified. After leaving the store, appellant drove the female to a residence according to her direction. He did not see her again.

## Discussion

In his fifth and sixth issues, appellant contends the trial court erred by admitting evidence of an extraneous burglary charge from October 11, 2007, over his Rule 404(b) and Rule 403 objections. Tex. R. Evid. 404(b), 403. On these issues, the State concedes error.

As noted, appellant denied that Saldana was the female he drove to the convenience store and then to a residence on September 20. Appellant said he believed Saldana was motivated to testify falsely because he saw other women.

Appellant agreed on cross-examination that he was arrested for burglary at Saldana's apartment on October 11. He went to the apartment to retrieve items of clothing and his cell phone but could not gain admission. He broke a door hinge by banging on the

4

door and began sounding his car horn. Police were summoned and arrested him at the apartment door.

Appellant acknowledged a one-month relationship with Saldana. He testified on direct examination they met in mid-August 2007 and spent time together while he was not working. When asked by his counsel if appellant and Saldana had a dating relationship, appellant replied, "pretty much, you know, it was just a grown-up thing."

On cross-examination, appellant acknowledged keeping clothing at Saldana's apartment as he "spent the night over there" seven or eight times. Otherwise, cross-examination on the burglary arrest focused largely on the facts of the alleged offense, including damage to the apartment door, appellant's arrest and transport to jail, and an attempt by Saldana's sister, who was in the apartment, to protect herself.

We review a trial court's decision to admit or exclude evidence for abuse of discretion. *Shuffield v. State,* 189 S.W.3d 782, 793 (Tex.Crim.App. 2006). A trial court does not abuse its discretion if its decision is within the zone of reasonable disagreement. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g).

Under Rule 401, evidence is relevant if it makes the existence of a fact that is of consequence to the determination of the action more probable than it would be without the evidence. Tex. R. Evid. 401; *Moses v. State,* 105 S.W.3d 622, 625 (Tex.Crim.App. 2003). Under Rule 402, there is a presumption of admissibility of relevant evidence. Tex. R. Evid. 402; *Moses,* 105 S.W.3d at 625. Under Rule 404(b), evidence of other crimes, wrongs,

5

or acts is inadmissible to prove a person's character for the purpose of showing action in conformity therewith. Tex. R. Evid. 404(b); *Montgomery,* 810 S.W.2d at 387-88.

Evidence of the October 11 burglary was presented with the apparent intent of rebutting appellant's effort to distance himself from Saldana and his testimony he drove another woman to the convenience store on September 20.[4] The testimony of appellant and Saldana established that at a time near the occurrence of the charged offense on September 20 they shared a close, dating relationship. While evidence appellant's clothing and cell phone still were located at Saldana's apartment on October 11 would have been relevant to indicate the duration and nature of their relationship, the evidence of the burglary focused instead largely on appellant's criminal behavior. Thus, evidence of what transpired at Saldana's apartment on October 11 did not have a tendency to make more probable a close relationship between appellant and Saldana on September 20 and her presence in his vehicle at the convenience store on that date. Rather its tendency was to show appellant was a bad person or his character conformed to that of a person from whom criminal conduct might be expected. We agree with appellant and the State that the trial court abused its discretion by admitting evidence of the October 11 burglary arrest. That conclusion makes it unnecessary to reach appellant's Rule 403 argument raised through his sixth issue. *See* Tex. R. App. P. 47.1.

---

[4] The jury charge contained a law of parties instruction. Under the law of parties, a person is criminally responsible for the offense of another, and can be convicted as a party, if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person committing the offense. *See* Tex. Penal Code Ann. §§ 7.01, 7.02(a)(2) (Vernon 2003).

We turn now to harm. A trial court's erroneous admission of extraneous offense evidence is non-constitutional error. *Roethel v. State,* 80 S.W.3d 276, 280 (Tex.App.–Austin 2002, no pet.). Accordingly, we must disregard the error unless it affects appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Conversely, if after examining the entire record we have "fair assurance that the error did not influence the jury, or had but a slight effect," the erroneous admission of evidence did not affect a substantial right. *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

The State's presentation of the alleged burglary, although factually detailed, was brief and received only passing mention in closing argument. And the prosecutor informed the jury that the sole question for its determination was appellant's guilt of the charged offense of September 20. The propensity and potency of the October 11 evidence to characterize appellant as a criminal was blunted by the previous, unopposed, admission of evidence of appellant's prior conviction for manslaughter. From our review of the entire record, we conclude this error did not influence the jury, or had but a slight effect on its verdict of guilt. We overrule appellant's fifth issue.

Through his ninth, tenth and eleventh issues appellant complains the trial court erroneously admitted a 1993 judgment convicting him of misdemeanor assault over his Rule 404(b), Rule 403, and Rule 609 objections. The State concedes admission of this evidence was error.

The State offered the 1993 judgment during its cross-examination of appellant. The judgment recites the assaultive event occurred February 20, 1992. Punishment of appellant was assessed at three days in the county jail. The judgment and record do not identify the victim.

*Admissibility under Rule 404(b)*

Under the facts presented, we agree with the State and appellant that the 1993 judgment was not admissible under Rule 404(b). It had no relevance apart from proof of character conformity. We do not reach appellant's tenth issue through which he complains the trial court erred by admitting the 1993 judgment over his Rule 403 objection. *See* Tex. R. App. P. 47.1.

*Admissibility as impeachment evidence under Rule 609(a)*

Rule 609(a) provides that a witness may be impeached by evidence of conviction of a felony or a crime involving moral turpitude when the court determines that the probative value of the evidence outweighs its prejudicial effect.[5] Tex. R. Evid. 609(a). A trial court's ruling on the admission of impeachment evidence is generally reviewed for abuse of discretion. *Theus v. State,* 845 S.W.2d 874, 881 (Tex.Crim.App. 1992). The burden of demonstrating the admissibility of the impeachment evidence is on its proponent. *Id.* at 880.

---

[5]Rule 609(b) contains a ten-year time limitation and a balancing test for admissibility of temporally remote convictions. *See* Tex. R. Evid. 609(b).

8

It has been held that misdemeanor assault of a female is a crime of moral turpitude. *See Jackson v. State,* 50 S.W.3d 579, 592 (Tex.App.–Fort Worth 2001, pet. refused) (considering misdemeanor assault of female victim by male); *Hardeman v. State,* 868 S.W.2d 404, 405-06 (Tex.App.–Austin 1992, pet. dismissed) (conviction for misdemeanor assault by man of a woman is crime involving moral turpitude and admissible as impeachment evidence under Rule 609). And we have not been cited to, nor do we find, any controlling case authority for the conclusion that misdemeanor assault by a male of another male is a crime involving moral turpitude. *Cf. Valdez v. State,* 450 S.W.2d 624, 625 (Tex.Crim.App. 1970) (in case predating the 1973 revision of the Penal Code and the rules of criminal evidence, court stated, "[a]ggravated assault (not committed on a female) is not a misdemeanor involving moral turpitude");[6] *Patterson v. State,* 783 S.W.2d 268, 271 (Tex.App.–Houston [14th Dist.] 1989, pet. refused) ("misdemeanor assaultive offenses which do not involve violence against women are not crimes involving moral turpitude").

The record contains no evidence the victim of the 1992 assault was female. There is therefore no proof this was a misdemeanor involving moral turpitude. Evidence of this conviction was not available for impeachment under Rule 609.[7]

We consider the question of harm, applying the non-constitutional standard. Tex. R. App. P. 44.2(b). The 1993 conviction was remote. It concerned a misdemeanor for

---

[6] Prior to the 1973 revision of the Penal Code, aggravated assault was a misdemeanor. *Hardeman v. State,* 868 S.W.2d 404, 406 n.1 (Tex.App.–Austin 1993, pet. dismissed).

[7] The time limitation and exception for older convictions of Rule 609(b) are, accordingly, of no import to this analysis.

which appellant was punished by three days' confinement in the county jail. Aside from admitting the judgment and asking appellant if he was convicted of assault, the State made no further mention of the 1993 conviction. The State did not rely on the 1993 conviction for its case-in-chief. It may have intended the judgment as impeachment evidence, but as noted, a judgment convicting appellant of manslaughter was previously admitted. With fair assurance on this record, we find the evidence of the 1993 conviction did not influence the jury, or had but a slight effect on its verdict. *Johnson,* 967 S.W.2d at 417. Accordingly, appellant's issues nine and eleven are overruled.

Appellant's seventh, eighth, twelfth and thirteenth issues arise from the trial court's admission of evidence of appellant's alleged 1997 check forgery and alteration of his employer's time record. The State concedes admission of this evidence was error.

On cross-examination, appellant testified he had not committed forgery or been charged with forgery. On rebuttal, the State called a former Lubbock police officer who testified over appellant's objection that in 1997 he investigated a reported forgery at a Lubbock convenience store. The officer said a representative of the store told him appellant attempted to cash a payroll check at the store that was altered by adding $400 to the total. A representative of appellant's former employer confirmed the alteration for the officer. The officer also learned from the former employer that it once terminated appellant for falsifying time slips but reinstated him under an agreement to make up the falsely reported time. It was after returning to work that appellant allegedly altered the payroll check and attempted to pass it at the convenience store. No representative of the store or appellant's former employer testified. Nor does the record indicate such witnesses

10

were unavailable to testify and had previously been subject to cross-examination by appellant on the issue. Appellant was not convicted of the alleged 1997 forgery or for altering time records.

Through issues twelve and thirteen, appellant contends the trial court erroneously admitted testimony of the 1997 forgery and alteration of his employer's time records in violation of his state and federal constitutional rights to confront adverse witnesses. The Confrontation Clause of the Sixth Amendment bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53-54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). In *Davis v. Washington*, the Court refrained from fashioning a litmus test for identifying testimonial statements but did offer guidance:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006). To determine whether the statements to which the officer testified were testimonial, we look to evidence of an ongoing emergency at the time they were made.

11

In *Davis*, the Court noted non-exclusive factors for consideration when determining whether statements were made during an ongoing emergency: 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion. *Davis*, 547 U.S. at 829-30, 126 S.Ct. at 2278; *Vinson v. State,* 252 S.W.3d 336, 339 (Tex.Crim.App. 2008).

From the record before us, the primary purpose of the officer's role is readily apparent. He investigated a forgery at an unspecified time after its discovery. In the course of the investigation he learned of altered time records at appellant's workplace. Any alleged crimes were complete. The police purpose was not to render aid or otherwise quell an ongoing emergency but to investigate past criminal conduct and gather evidence for possible prosecution. The record here does not indicate appellant, the alleged perpetrator, was nearby during the questioning or that the questioning occurred in an environment that was not tranquil and safe. *See Davis,* 547 U.S. at 827, 126 S.Ct. at 2276-77 (including such factors in analysis). The State concedes the trial court erred by admitting the officer's statements pertaining to the 1997 extraneous acts. And from our analysis we agree. We find the statements of the store representative regarding the altered check and appellant's former employer regarding altered time records were testimonial in nature and were admitted in violation of the Confrontation Clause of the Sixth Amendment.

A violation of the Confrontation Clause is subject to a harmless error analysis. *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986). We must reverse the judgment of the trial court unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See* Tex. R. App. P. 44.2(a). In applying this harm analysis to hearsay statements admitted in violation of the Confrontation Clause, we consider the entire record, taking into account such factors as: 1) the importance of the hearsay evidence to the State's case; 2) whether the hearsay evidence was cumulative of other evidence; 3) the presence or absence of other evidence corroborating or contradicting the hearsay evidence on material points; and 4) the overall strength of the State's case. *Clay v. State,* 240 S.W.3d 895, 904 (Tex.Crim.App. 2007). We further consider any other factor presented by the record that indicates the probable impact of the error on the minds of average jurors. *Id.*

Here, the State rested in the guilt-innocence phase of trial early on the second day. We would not characterize the State's proof of appellant's knowing participation in the check scheme as overwhelming. The erroneously admitted evidence followed in fairly rapid sequence through the cross-examination of appellant and the State's rebuttal. And the hearsay statements lacked independent corroboration.

Assuming, *arguendo,* we could find the Confrontation Clause violations raised by issues twelve and thirteen, taken singularly, nevertheless to be harmless, they would join the other errors we have thus far discussed, all of which, although conceded by the State, have proven harmless when taken one-by-one. But we may not take such a myopic view

13

and still fulfill our responsibility to evaluate the harm to appellant from the constitutional error. Error may accumulate to such a level that the accused is denied a fair trial. *Brown v. State,* 978 S.W.2d 708, 715 (Tex.App.–Amarillo 1998, pet. refused) (*citing Stahl v. State,* 749 S.W.2d 826, 831-32 (Tex.Crim.App. 1988)).[8]

> Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect. In other words, a column of errors may sometimes have a logarithmic effect, producing a total impact greater than the arithmetic sum of its constituent parts.

*United States v. Sepulveda,* 15 F.3d 1161, 1196 (1st Cir. 1993). *See United States v. Wood,* 207 F.3d 1222, 1237 (10th Cir. 2000) (errors of trial court were individually harmless but their accumulated effect was harmful). "If any of the errors being aggregated are constitutional in nature, the cumulative error must be harmless beyond a reasonable doubt, in accordance with *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)." *United States v. Toles,* 297 F.3d 959, 972 (10th Cir. 2002).

According to appellant's defensive theory, the female who accompanied him to the convenience store on September 20 was not Saldana, and he lacked any knowledge that the female with him paid for beer with a forged check. Among the State's evidence, his theory was countered first, and primarily, by the testimony of Saldana herself. But Saldana's criminal history and unfounded motivation to freely incriminate herself gave reason for pause. Into this testimonial standoff came the erroneously offered and admitted

---

[8] The situation presented here must be distinguished from the attempt of an appellant to cumulate non-errors into error. *See Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex.Crim.App. 1999). *See also Feldman v. State,* 71 S.W.3d 738, 757 (Tex.Crim.App. 2002) (op. on reh'g) (number of errors may be found harmful in their cumulative effect).

evidence of the October 11 burglary arrest, the 1993 misdemeanor assault conviction, and the 1997 forgeries. In this circumstance, we believe the persuasive effect of the erroneously admitted evidence cannot be ignored. Jurors are naturally inclined to infer guilt of the charged offense from extraneous offense evidence. *Abnor v. State,* 871 S.W.2d 726, 738 (Tex.Crim.App. 1994).

Our concern is not "whether there was sufficient evidence on which [appellant] could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 88, 84 S.Ct. 229, 231, 11 L.Ed.2d 171 (1963). From our review of the entire record, we are unable to say beyond a reasonable doubt that the error discussed, in its cumulative effect, did not contribute to the conviction of appellant. We are thus required to conclude it was harmful. Tex. R. App. P. 44.2(a).

## Conclusion

Appellant's remaining issues, even if reflecting harmful error, would require no more than remand for a new trial. Their discussion is therefore unnecessary to our disposition of this appeal. Tex. R. App. P. 47.1. We reverse the judgment of the trial court and remand the case for a new trial.

James T. Campbell
Justice

Do not publish.