**Allen J. HASTINGS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–99–0055–CR.**

Court of Appeals of Texas, Amarillo.

May 10, 2000.

Daniel R. Wheeler, Chappell, Lanehart & Wheeler, P.C., Lubbock, for appellant.

William C. Sowder, Criminal Dist. Atty., Wade Jackson, Asst. Criminal Dist. Atty., Lubbock, for appellee.

Before QUINN, REAVIS and JOHNSON, JJ.

BRIAN QUINN, Justice.

Allen Hastings (appellant) appeals, through five issues, his conviction for delivery of a controlled substance within a drug free zone. The first issue concerns the legal and factual sufficiency of the evidence underlying the jury's verdict. The next concerns the ability of the trial court to admit, during the guilt/innocence phase of the trial, evidence solely relevant to the enhancement of punishment. The third involves whether the trial court incorrectly instructed the jury about the range of punishment. The fourth pertains to whether the prosecutor made an improper plea to the community during his closing argument. And, the last involves the ad-mission of extraneous evidence and wheth-er it was error. We affirm.

### *Background*

The State indicted appellant for inten-tionally and knowingly delivering cocaine to a drug enforcement officer on August 20, 1998. The transaction, which was the fourth that month between appellant and the officer, occurred within 1,000 feet of the Wheatley Elementary School in Lub-bock.

### *Issue One—Legal and Factual Sufficiency of the Evidence*

Through his first point, appellant attacks both the legal and factual sufficien-cy of the evidence. That is, he believes it insufficient to establish that the transac-tion occurred within 1,000 feet of premises owned, rented or leased by a school. Such proof was needed to enable the State to enhance his punishment under section 481.134(c) of the Texas Health and Safety Code. We overrule the contention.

The standards of review applicable to our review of the legal and factual suffi-ciency of the evidence are well-founded and need not be repeated. Instead, we cite the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *King v. State,* 895 S.W.2d 701 (Tex. Crim.App.1995), and *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996) for expla-nations of the standards.

Among other things, the State endeav-ored to enhance appellant's punishment under section 481.134(c) of the Health and Safety Code. It did so by alleging that the offense was committed "in, on, or within 1,000 feet of the premises owned, rented, or leased by a school, institution of higher learning, or a playground, further de-scribed as Wheatley Elementary School...." Under section 481.134(c), one's minimum term of imprisonment is increased by five years "if it is shown on the trial of the offense that the offense was

committed ... in, on, or within 1,000 feet of premises of a school...." TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (Vernon Supp.2000). Thus, to successfully enhance appellant's punishment, the State was obligated to present evidence satisfying this condition.

The evidence presented initially consisted of the name of the structure involved, that is, Wheatley Elementary School. According to the Texas Court of Criminal Appeals, that "alone is sufficient to raise a presumption that [the building] is a private or public ... school." *Young v. State*, 14 S.W.3d 748, 754 (Tex.Crim.App.2000). However, additional evidence was presented in the form of testimony by Officer Lucio Trevino of the Lubbock Independent School District. Officer Trevino stated that Wheatley is a school owned by the local school district. When combined, this evidence was and is more than ample to permit a rational jury to find beyond reasonable doubt that Wheatley is a school as required by section 481.134(c). *Young v. State, supra.* Furthermore, the finding was not, and is not, clearly wrong or manifestly unjust when tested against all the evidence of record. Accordingly, we find the evidence both legally and factually sufficient.

### Issue Two—Submitting Issue During Guilt/Innocence Phase

■ Next, appellant contends that the trial court erred by asking the jury to determine, during the guilt/innocence phase of the trial, whether appellant committed the offense within 1,000 feet of a school. This is allegedly so because the question related solely to punishment; therefore, it should have been submitted during the punishment phase of the trial. We overrule the proposition.

The State indicted appellant for violating section 481.112(c) of the Texas Health and Safety Code.[1] And, as previously mentioned, it also sought to increase the punishment applicable to the offense by alleging that he committed the violation within 1,000 feet of "premises owned, rented, or leased by a school, institution of higher learning, or a playground...."

■ As a preliminary matter, we note that sections 481.134(b) and 481.134(c) of the Health and Safety Code were implicated due to the allegations in the indictment. That is, the former section involves the commission of the offense within "1,000 feet of premises owned, rented, or leased by an institution of higher learning or a playground ...," TEX. HEALTH & SAFETY CODE ANN. § 481.134(b)(1) (Vernon Supp. 2000), while the latter pertains to the commission of the offense within "1,000 feet of premises of a school...." *Id.* at section 481.134(c). And, since the indictment alluded to all three types of structures, it could be said that enhancement was sought under both section 481.134(b) and (c). However, the evidence of record established that the structure in question was neither an institution of higher learning nor a playground, but a school. Given this and the fact that section 481.134(b) does not apply to schools, *Young v. State*, 14 S.W.3d at 753, we conclude that enhancement could only have occurred via application of section 481.134(c).

Next, and as also previously mentioned, section 481.134(c) comes into play "if it is shown *on the trial of the offense*" that the drug transaction occurred within 1,000 feet of a school. TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (emphasis added). So, within the phrase "shown on the trial of the offense" lies the answer to the current point. That is, we must determine whether that phrase restricts presentation of the

---

1. Section 481.112(a) of the Texas Health and Safety Code states that a person commits an offense if he knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver a controlled substance

listed in penalty group one. Section 481.112(c) of the same code states that an offense under subsection (a) is a felony of the second degree if the amount of the substance is one gram or more but less than four grams.

pertinent evidence to the punishment phase of the trial. We conclude that it does not for the following reasons.

First, it is true that a criminal trial consists of two phases, one pertaining to guilt and innocence and the other to punishment. Tex.Code Crim. Proc. Ann. art. 37.07, § 2 (Vernon Supp.2000). Second, the Texas Legislature was cognizant of this truism as is exemplified by section 481.134(b). In the latter, it expressly stated that the punishment could be increased if the conditions permitting enhancement were established "at the punishment phase of the trial of the offense...." Tex. Health & Safety Code Ann. § 481.134(b). Thus, by restricting proof of the conditions to the "punishment phase" in section 481.134(b), the legislature not only knew of the two phases of a criminal trial but also wanted the pertinent evidence to be tendered only in that phase. Yet, unlike section 481.134(b), section 481.134(c) lacks language expressly restricting admission of the pertinent evidence to the punishment phase. Again, the legislature merely stated that it be "shown on the trial of the offense." From this, we deduce that the legislature intended to permit the State to offer evidence of the crime and its proximity to a school at *either* phase of the trial. To reason otherwise would be to ignore both the legislature's action *vis* section 481.134(b) and the plain meaning of the words "shown on the trial of the offense."[2]

■ In short, if the legislature intended that the evidence of the crime's proximity to a school be established only during the punishment phase of the trial, it could have said so as it did in section 481.134(b). *Garcia v. State*, 15 S.W.3d 533, 536 (Tex. Crim.App.2000) (stating that language in a statute which expressly authorizes a proce-

dure in one setting but which is omitted in another suggests that the procedure authorized in the former is not to be used in the latter). Because 1) it did not say so in section 481.134(c), 2) it used words which encompassed both phases of the trial, and 3) the law obligates us to interpret statutes as intended by the legislature, we hold that the State may prove that the drug transaction occurred within 1,000 feet of a school during either phase of the trial.[3]

### *Issue Three—Range of Punishment*

■ Next, appellant contends that the trial court erred by incorrectly charging the jury about the range of punishment. We overrule the proposition.

According to statute, if one being tried for a felony has previously been convicted of two felonies, then "on conviction [of the current felony] he shall be punished by imprisonment ... for life, or for any term of not more than 99 years or less than 25 years." Tex. Pen.Code Ann. § 12.42(d) (Vernon Supp.2000). Furthermore, if the crime for which the accused is currently being tried involves a violation of section 481.112(c) of the Health and Safety Code, then the minimum term of imprisonment is increased by five years. Tex. Health & Safety Code Ann. § 481.134(c). Thus, when section 12.42(d) and section 481.134(c) are combined, the term of imprisonment becomes life or not more than 99 years or less than 30 years.

Here, the indictment against appellant recited that he had previously been convicted of two felonies. One occurred in 1990 and concerned the possession of a controlled substance. The other arose in 1988 and involved the unauthorized use of a motor vehicle. Furthermore, appellant

---

**2.** Incidentally, the evidence of the crime and its proximity to a school in *Young* was also tendered during the guilt innocence phase. *Young v. State*, 14 S.W.3d 748 (Tex.Crim.App. 2000).

**3.** We acknowledge, as suggested by appellant, that offering proof of a drug transaction near a school could unduly sway jurors to convict

an accused on questionable evidence. Thus, to avoid this potentiality, one may conclude that the better practice would be to offer the proof solely during the punishment phase. Yet, we cannot mandate that since the legislature has spoken on the issue, and we cannot ignore its directive.

admitted at trial that each of those allegations were true. This, consequently, placed him within the ambit of § 12.42(d). In other words, upon being convicted of the felony for which he was currently being tried and had section 481.134(c) been uninvolved, appellant risked imprisonment for life or for a term of not more than 99 years or less than 25 years. Yet, section 481.134(c) was involved and it mandated that the minimum term of imprisonment be increased by 5 years.[4] Thus, appellant actually was subject to a term of imprisonment for life or not less than 30 years or more than 99 years. Moreover, that was exactly the range of punishment contained in the jury charge.

### Issue Four—Plea to the Community

Next, appellant argues that the judgment is subject to reversal since the State made an improper plea to the community during the punishment phase, the prejudicial effect of which could not have been cured by an instruction to disregard. We reject the contention.

■ The argument in question involved the prosecutor stating that "if you don't give him life ... if you don't give him life, you insult all of those kids going to school over there at Wheatley Elementary. You tell them you're not worth protecting; you're not worth us taking a drug dealer out of your neighborhood for life." To this argument, however, appellant did not object. This omission effectively waived any complaint he may have had, irrespective of whether an instruction to disregard could have remedied the alleged prejudice. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex. Crim.App.1996).

### Issue Five—Evidence of Prior Drug Transactions

Finally, appellant contends that the trial court reversibly erred in admitting into evidence discussion of three extraneous offenses. We overrule the point.

Assuming that a trial court erred in admitting evidence, the error must be harmful before it warrants reversal. TEX. R.APP. P. 44.2. With regard to the improper admission of evidence involving extraneous offenses, the analysis used in assessing harm is that found under Texas Rule of Appellate Procedure 44.2(b). *See Rodriguez v. State,* 974 S.W.2d 364, 369–70 (Tex. App.—Amarillo 1998, pet. denied) (applying Rule 44.2(b)); *Garza v. State,* 963 S.W.2d 926, 929–31 (Tex.App.—San Antonio 1998, no pet.) (applying Rule 44.2(b)). Thereunder, we determine if the error affected appellant's substantial rights. TEX. R.APP. P. 44.2(b). If it did, then it is harmful; if it did not, then it is not harmful. *Id.*

■ Next, application of the test involves a two-step process. We initially determine whether a substantial right is involved. Should that be answered in the affirmative, we then gauge the potential impact of the error on the fact-finder's decision. If the potential impact is nonexistent or slight, then the error is harmless. *Rodriguez v. State,* 974 S.W.2d at 369–70. In short, it must be substantial and injurious before reversal is permitted. *Id.; Brown v. State,* 978 S.W.2d 708, 714 (Tex. App.—Amarillo 1998, pet. denied). Useful in assessing the extent of impact, if any, are such indicia as the amount of evidence (other than that improperly admitted) which supports the verdict, the emphasis placed upon the improper evidence, the source of the error, the potential collateral

---

4. Contrary to appellant's argument, section 481.134(c) was not rendered inapplicable because the indictment also included language contained in section 481.134(b). As previously discussed, the latter statute does not apply when the evidence illustrates that the offense occurred within 1,000 feet of a school (as opposed to an institution of higher learning or playground). *Young v. State,* 14 S.W.3d 748 (Tex.Crim.App.2000). So, since the State proved that appellant delivered the drugs within 1,000 feet of a school (as opposed to an institution of higher learning or a playground), only section 481.134(c) was applicable.

implications of the error, and the likelihood that the error would be repeated with impunity if held harmless. *Id.* But, by no means is this list of criteria exclusive. Others may be considered if relevant. *Brown v. State,* 978 S.W.2d at 714.

■ At bar, appellant had a right to a fair trial, that is, a right to be tried only for the offense alleged in the indictment. *Wheeler v. State,* 988 S.W.2d 363, 369 (Tex. App.—Beaumont 1999, pet. granted). Furthermore, it is beyond doubt that the right to a fair trial is quite substantial. Thus, the admission by the court of extraneous offenses implicated a substantial right.

■ Next, the extraneous offenses at issue involved three drug transactions in which appellant participated, occurring on August 3rd, 4th and 6th of 1998.[5] Yet, of those three, appellant stated that he had "no objection" to the discussion of the one occurring on August 3rd. More important, because evidence of that transaction came in without objection, we cannot say that it constituted improper evidence. Additionally, a plethora of evidence existed which established appellant's guilt for the crime alleged in the indictment, not the least of which included a tape recording containing appellant's statement that he could obtain larger quantities of the drug if needed. Thus, it cannot be said that evidence of the August 4th and 6th extraneous offenses served to induce the jury to convict in a case involving weak or questionable evidence.

Moreover, the decision of the State to offer the evidence was not unilateral. Rather, the trial court resolved the question before trial and permitted the State to introduce it. Thus, it cannot be said that the State acted with evil motive in proffering the evidence or that it would act with impunity in the future if we were to affirm the judgment. And, while the extraneous

offenses were used to support the State's allusion to appellant as a drug dealer, we must remember that the record contained evidence of at least two drug transactions which came in without objection; the first being that for which appellant was charged and the second being that which occurred on August 3rd.[6] The evidence of these two transactions was enough to entitle a prosecutor to legitimately argue that appellant was indeed a drug dealer, especially when coupled with the statements contained on the aforementioned tape.

In sum, and after looking at the record as a whole, we conclude that any potential impact of the extraneous offenses was, at best, slight. Consequently, any wrong committed by the trial court in admitting the evidence was harmless.

Having overruled each of appellant's issues, we affirm the judgment entered below.

---

5. Again, the transaction for which appellant was indicted occurred several weeks thereafter on August 20, 1998.

6. This does not take into consideration appellant's 1990 final conviction for possessing drugs which he conceded to be true.