NO. 07-01-350-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 24, 2002
_____

DANIEL MARTINEZ,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-435,628; HON. JIM BOB DARNELL, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Daniel Martinez (appellant) appeals his conviction for aggravated robbery. Via eight issues, he claims that the trial court erred by 1) failing to grant a mistrial after a State's witness commented on appellant's silence during questioning, 2) wrongfully admitting evidence regarding extraneous offenses, 3) failing to give a limiting instruction at the time the extraneous matters were admitted, 4) allowing the State to question a witness about matters outside the record and 5) failing to grant a mistrial when the State questioned a witness about matters intended to inflame the jury. For the following reasons, we affirm.

## *Background*

Appellant was charged by indictment with the aggravated robbery of an E-Z Mart store in Lubbock, Texas.  The accusation was enhanced by two prior felonies.  At trial, the clerk testified that the robber was a Hispanic male who wore a cap, dark sunglasses and a blue plaid jacket or shirt, demanded money from the register, and directed him to "hurry up."  So too did the clerk identify appellant as the robber.  From pictures or video of the robbery, appellant's uncle also identified appellant as the robber.  Furthermore, a search of appellant's home lead to the discovery of clothing which matched that worn by the robber during his commission of the crime.

Upon cross examination, defense counsel interrogated the clerk about his identification of appellant as the robber.  So too was appellant's uncle cross-examined.  Thereafter, the State requested permission from the trial court to introduce evidence of several other robberies allegedly akin to the E-Z Mart crime and occurring within seven days of it.  Approval was granted the State.  The evidence subsequently presented evinced robberies of two other convenience stores (a 7-11 and a Phillips 66) and one fast food restaurant (a Kentucky Fried Chicken restaurant or KFC).  Like the one who committed the E-Z Mart crime, the individual who robbed the 7-11 and Kentucky Fried Chicken restaurant (KFC) was 1) Hispanic, 2) with facial hair possibly resembling a goatee but constituting less than "a full-grown beard," 3) wearing a blue plaid flannel shirt or jacket, gloves, and sunglasses and 4) brandishing a handgun.  In the third (the Phillips 66 store), the robber wore a Dallas Cowboys jacket and a Halloween mask; furthermore, plastic bags covered his hands which may or may not have held a handgun, according to the clerk.

2

So too did the State obtain permission from the trial court to present syringes and metal spoons with a white powdery residue into evidence. It also questioned appellant's uncle, with whom appellant lived, about his feelings regarding the presence of those syringes and spoons in the vicinity of his children.

Eventually, the jury convicted appellant of aggravated robbery. However, it did not set punishment. That task was left to the trial court, which sentenced appellant to 75 years in prison.

### Issue One - Improper Comment on Appellant's Post-Arrest Silence

Via his first issue, appellant argues that the trial court erred in denying his motion for mistrial "after a witness for the State alluded to appellant's silence following his arrest, thereby violating appellant's constitutional right against self-incrimination under the fifth and fourteenth amendments" to the United States constitution, "and art. one, §10, of the Texas constitution." We overrule the point.

At trial, the following exchange occurred between the prosecution, an officer testifying for the State, and defense counsel.

Prosecutor: Have you seen any evidence that was possibly gathered as a result of this?

Witness: Only after the arrest was made. Actually, it wasn't the arrest. He was questioned and brought to the detective division before the arrest warrants. It was just still under investigation.

Prosecutor: And did you speak with the suspect [appellant] at that time?

Witness: Yes, I did.

Prosecutor: Is that part of your responsibility as being Detective on these cases?

Witness: Yes, it is.

3

Prosecutor: And what can you tell us from that?  Did you give the suspect any Miranda warnings?

Witness: Yes, I did.

Prosecutor: *And did you ask the suspect if he wished to speak with you?*

Witness: *Yes.  And he refused to talk about* --

Def. Att. Objection, I am going to object to this, your Honor, as violating my client's right to remain silent under the Fifth Amendment to the Constitution of the United States, and article one, section 10 of the Texas Constitution.

Court: Sustained.

Def. Att. Ask that the jury be instructed to disregard.

Court: The jury will disregard the last question and answer.

Def. Att. Move for mistrial, Your Honor.

Court: Overruled.

(Emphasis added).

Assuming *arguendo* that the State's witness improperly commented upon the appellant's silence[1], we see that the trial court sustained the objection and instructed the jury to disregard the particular question and answer.  Given the lack of evidence indicating that the prosecutor ever raised the subject again, the large quantum of evidence establishing appellant's guilt, and the fact that the court (as opposed to the jury) set appellant's punishment at 75 years, we conclude that the instruction to disregard cured the

---

[1]The Court of Criminal Appeals stated in *Waldo v. State*, 746 S.W.2d 750 (Tex. Crim. App. 1988) that "[p]rearrest silence is a constitutionally permissible area of inquiry." *Id.* at 755.  The witness at bar testified that appellant had not been arrested at the time appellant allegedly refused to talk about something.  And, we say "something" because the witness was prevented from completing his answer by appellant's objection.  So, we do not know with certainty what the suspect allegedly refused to talk about while purportedly undergoing questioning before his arrest.

4

supposed error.[2] *See Waldo v. State*, 746 S.W.2d 750, 755-56 (Tex. Crim. App. 1988) (discussing the factors to consider in determining whether an instruction to disregard was sufficient to cure the purported comment on the defendant's silence); *Peters v. State*, 997 S.W.2d 377, 388 (Tex. App.--Beaumont 1999, no pet.) (finding the instruction to disregard sufficient to cure the alleged comment upon the defendant's pre-arrest silence).

### *Issues Two and Four — Evidence of Drug Use*

Through issues two and four, appellant contends that the trial court erred in admitting evidence of the presence of drugs in the home searched by the police officers and of appellant's use of same. The evidence consisted of seven syringes, three metal spoons containing a white powdery residue, and "track marks" on appellant's arm which were allegedly indicative of drug use. Furthermore, the court admitted the items and testimony, at the State's insistence, as evidence illustrating appellant's motive to commit aggravated robbery. That is, the court permitted the State to refer to the evidence as proof that appellant committed the robbery to pay for his purported drug habit. We overrule the issues.

Both this court and the Court of Criminal Appeals have rejected the notion that evidence of drug use is generally admissible to show motive to commit burglary. *Rogers v. State*, 853 S.W.2d 29, 34 n.8 (Tex. Crim. App. 1993); *Young v. State*, 837 S.W.2d 185, 188 (Tex. App.--Amarillo), *rev'd on other grounds*, 843 S.W.2d 570 (1992). This is

---

[2]That the trial court sentenced appellant, as opposed to the jury, is of consequence. This is so because an indicia considered in determining whether the instruction to disregard sufficed to cure harm involves the likelihood that the comment affected the sentence imposed *by the jury*. *Waldo v. State*, 746 S.W.2d at 757. If the jury did not levy the punishment, then the comment could not have affected a sentence it did not levy. Furthermore, without evidence to the contrary appearing of record, we will not infer that the trial court ignored its own admonishment to disregard when it determined punishment.

especially so when nothing appears of record establishing an affirmative link between the drug use and burglary, such as evidence indicating how often the defendant used drugs, the financial cost experienced by the defendant in maintaining his alleged habit, and the availability (or lack thereof) of other financial resources to pay for the contraband. *Rogers v. State*, 853 S.W.2d at 34 n.8, *quoting Powell v. State*, 478 S.W.2d 95 (Tex. Crim. App. 1972).

Here, the State offered no evidence illustrative of the affirmative link to which we refer. Other than allusion to "tracks" appearing on appellant's arm, nothing was said about the extent of appellant's alleged drug habit, its cost to him, or the availability of other resources to pay for the drugs, assuming he had a drug habit. Consequently, the evidence was not admissible to show motive to commit robbery, and the court erred in admitting it.

Nevertheless, we find the error harmless. Again, the evidence of appellant's guilt was overwhelming. Additionally, drug usage was not mentioned until the trial court granted the State permission to broach it. So, it cannot be said that the prosecutor's conduct exemplified bad faith warranting redress by this court. *Hastings v. State*, 20 S.W.3d 786, 792 (Tex. App.--Amarillo 2000, pet. ref'd) (considering this as a factor when assessing harm). Moreover, the State mentioned the evidence during its summation once and only after appellant's counsel broached the subject. Thus, we cannot say that the inadmissible evidence had a substantial and injurious affect upon the jury's decision thereby harming appellant under Texas Rule of Appellate Procedure 44.2(b). *See Hastings v. State*, 20 S.W.3d at 791 (stating that error is not harmful if it has no or merely slight impact upon the

verdict); *Veteto v. State*, 8 S.W.3d 805, 815 (Tex. App.–Waco 2000, pet. ref'd.) (stating the same).

### Issue Three – Limiting Instruction

Appellant next complains about the trial court's failure to afford him a limiting instruction at the time the syringes and metal spoons were admitted into evidence. That is, he contends that to the extent the evidence was admissible to show motive, the court should have instructed the jury, at the time it was admitted, to consider it for no purpose other than motive. Here, the trial court did not provide the limiting instruction until immediately before that body retired to deliberate guilt. We overrule the issue.

Six years ago the Texas Court of Criminal Appeals held that limiting instructions must be given when the evidence in question is admitted, assuming a litigant requests it. *Rankin v. State*, 974 S.W.2d 707, 713 (Tex. Crim. App. 1996). This would have required the trial court at bar to provide the instruction sought by appellant at the time the evidence was admitted had the evidence been admissible. But, the evidence was not admissible. So, appellant was not entitled to the instruction but rather to the utter exclusion of the evidence. And, because he was not entitled to the instruction, the issue before us is moot.

### Issues Five and Six –Failure to Grant Mistrial

Through his fifth and sixth issues, appellant claims that the trial court abused its discretion in failing to grant his motions for mistrial. He believed himself entitled to same when the court sustained his objections to several questions by the prosecutor directed to appellant's uncle. The first involved whether the uncle had "ever seen him [appellant] use

7

drugs when he was living with you" and the second concerned whether the witness was scared of appellant. We overrule the issues.

As previously mentioned, the trial court sustained appellant's objections to each question. So too did it instruct the jury to disregard them. Furthermore, our review of the record fails to illustrate that the objectionable matter and its alleged prejudicial affect was beyond cure via the timely instruction to disregard. *See Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (stating that a prompt instruction to disregard will cure error associated with an improper question).

### *Issues Seven and Eight – Extraneous Robberies*

Lastly, appellant alleges that the trial court abused its discretion in admitting evidence of the 7-11 and KFC robberies. However, he does not complain about the evidence evincing the Phillips 66 robbery. Nor does he contend that the evidence was irrelevant or inadmissible as proof of character conformity. Rather, he argues that it should have been excluded under Rule 403 simply because the "State had strong direct evidence to show that the [a]ppellant committed the [E-Z Mart] robbery . . . and the proffered jury instruction was unlikely to be effective . . . ."[3] We overrule the issues.

First, we cannot ignore the fact that appellant's attempt to apply the circumstances at bar to the law he mentions consists of no more than the quotation set forth in the immediately preceding paragraph. That is not the substantial analysis contemplated by Rule 38.1(h) of the Texas Rules of Appellate Procedure. *Vasquez v. State,* 22 S.W.3d 28,

---

[3]Texas Rule of Evidence 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

8

31 (Tex. App. - - Amarillo 2000, no pet.) (stating that an appellant must accompany his issue with substantial analysis to comply with Rule 38.1(h)). Why the instruction was supposedly insufficient to be effective goes unexplained. Nor does he explain why the supposed lack of need for the evidence should outweigh every other factor favoring its admission, such as relevance and tendency to prove identity. And, given this lack of analysis, he waived the point. *Id.*

Second, assuming *arguendo* that admission of the evidence was error, we find it harmless. Analyzing harm involves a two step process. First, we determine whether a substantial right is involved and then assess whether the error had more than a "slight" effect on the outcome. *Hastings v. State*, 20 S.W.3d at 792. It is beyond dispute that an accused has a substantial right to be tried only for the offense alleged in the indictment. *Id.* at 792. Thus, the prosecution's injection of extraneous offenses into the trial implicated a substantial right. *Id.*

Now, we must determine whether the error had more than a slight impact on the outcome of the trial. In doing so, we first consider the weight of the evidence establishing appellant's guilt, other than that about which appellant complains. And, in assessing it, we find that such evidence militates strongly against a finding of harm. Simply put, it is overwhelming. Not only did the store clerk positively identify appellant, so did his uncle after seeing a video of the robbery. Furthermore, the videotape and a picture of the robbery depicting both appellant and the clothes he wore were admitted in evidence and published to the jury. So too were various distinct items of clothing identified as those worn by the robber found in appellant's home and admitted into evidence. In short, appellant's

9

culpability for the E-Z Mart robbery was virtually indisputable, and this renders it difficult to conclude that any extraneous evidence could have had more than a slight impact on the finding of guilt.[4]

Next, the evidence in question was made the subject of hearings outside the jury's presence, and only after the trial court ruled it admissible was it tendered by the State. "Thus, it cannot be said that the State acted with evil motive . . . or that it would act with impunity in the future if we were to affirm the judgment." *Hastings v. State*, 20 S.W.3d at 792.

Additionally, of the three extraneous robberies, appellant complains of only two on appeal. Thus, we have before us a situation wherein substantial aspects of the purported harm which the appellant decries will remain in the case irrespective of what we do regarding the 7-11 and KFC crimes. This circumstance is not unlike that wherein one is left with assessing whether a different outcome would have occurred if two malignant tumors were removed from a body when nothing was done about a third of purportedly similar kind and affect. If each is injurious in their own right but the patient allows one to remain, we cannot say with any degree of reasonable probability that the patient would have experienced a different outcome than the one encountered. *See Hastings v. State*, 20 S.W.3d at 791-92 (noting the failure of the appellant to complain about all the inadmissible extraneous offenses in assessing probable harm). And, that is the circumstance before us. In appellant complaining on appeal about only two of the three

---

[4]This is not to say that the State is free to parade before the jury matters of tenuous value but extreme prejudice affect merely because the accused's guilt is clear. Again, the weight of the evidence is but one factor, though an important one, in assessing harm. *Garza v. State,* 963 S.W.2d 926, 929-30 (Tex. App. - - San Antonio 1998, no pet.) (holding that the overwhelming weight of the evidence is but one factor in assessing harm).

instances of purportedly inadmissible evidence, we are not in a position to say that the removal of two cancerous growths would have achieved a different outcome when a third is left to spread havoc.

Next, each of the three extraneous robberies was evidence susceptible to admission during the punishment phase under art. 37.07 of the Texas Code of Criminal Procedure. *See Padron v. State*, 988 S.W.2d 344, 346 (Tex. App.–Houston [1st Dist.] 1999, no pet.) (holding that the trial court may admit evidence of other crimes to aid the jury in assessing punishment). Thus, it cannot be said that they somehow induced the trial court to assess undue punishment.

Having overruled each issue, we affirm the judgment entered below.


Brian Quinn
Justice

Do not publish.

11