Gonzalez v. SOT










NUMBER 13-02-00284-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


RAYMOND GONZALEZ, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 347th District Court of Nueces County, Texas.


 


O P I N I O N



Before Justices Hinojosa, Yañez, and Garza


Opinion by Justice Hinojosa



 A jury found appellant, Raymond Gonzalez, guilty of the offenses of murder and
engaging in organized criminal activity, found he was a habitual felony offender, and
assessed his punishment for each offense at life imprisonment. The trial court ordered
both sentences to run concurrently. The trial court has certified that this case "is not a
plea-bargain case, and the defendant has the right of appeal." See Tex. R. App. P.
25.2(a)(2). In three issues, appellant contends: (1) there is insufficient evidence to
corroborate the testimony of accomplice witness Rosendo Martinez; (2) the prosecutor's
closing argument on punishment was prejudicial; and (3) the trial court erred in denying
appellant's request to recuse the prosecutor's office. We affirm in part and reverse and
remand in part.

A. Background


 On Saturday, May 13, 2000, Raul Pena was killed by members of an organization
called "the Mexican Mafia," of which the victim was a member. At trial, the state relied on
the testimony of Rosendo Martinez ("Rosendo") to prove appellant's complicity in the
murder. Rosendo, a lieutenant in the Mexican Mafia and friend of the appellant, testified
extensively regarding the course of events surrounding the murder of Raul Pena. Rosendo
described the order given by his superiors to execute Pena. Chosen to carry out this task
were Carlos Flores, Gabriel Martinez, Robert DeLaPaz, and appellant. Rosendo testified
that these individuals were to take Pena on a sham errand outside of Corpus Christi. Pena
would be told that the group was on its way to Robstown to collect some debts and
because there might be trouble, they were going to stop and arm themselves along the
way. Appellant was to drive his girlfriend's Ford Taurus and be accompanied by Flores,
and Gabriel Martinez. DeLaPaz and Pena were to follow in a Cadillac.

 These individuals drove to a field outside Corpus Christi where everyone but
appellant exited the Taurus and DeLaPaz let Pena out of the Cadillac. The men went
around to the trunk of the Taurus to get weapons. Gabriel Martinez then attempted to
shoot Pena in the back of the head but his gun jammed. Pena temporarily escaped into
the field. Flores and Gabriel Martinez quickly ran him down, shot him several times, and
beat him with a tire iron. During these events, appellant remained in the Taurus, keeping
watch. Gabriel Martinez then returned to the Taurus. They drove to another location and
burned the Taurus to destroy any forensic evidence of the crime. DeLaPaz followed in the
Cadillac. After the Taurus was destroyed, DeLaPaz drove everyone home.

 Unbeknownst to the group, a witness observed the murder. The witness was driving
past the field at the time the murder was taking place and called police. Corpus Christi
police officers were dispatched to the scene where Pena lay, still alive. Before he died,
Pena identified DeLaPaz as one of his attackers.

 After he was driven to his apartment, appellant was picked up for questioning by the
Corpus Christi Police Department. After he was released, appellant spoke with Rosendo
by telephone and expressed concern that he might be arrested. Rosendo arranged for
appellant to be transported to San Antonio by another member of the Mexican Mafia who
was in town from San Antonio. Appellant fled to San Antonio the next day where he
remained approximately one week, before returning. Appellant was arrested two days after
he returned to Corpus Christi.

 Throughout this time period, appellant was on parole and subject to electronic
monitoring. He was allowed to leave his residence Monday through Friday to work
between the hours of 6:30 a.m. and 6:00 p.m. If he wanted to leave his apartment at any
other time, appellant needed pre-approval from his parole officer. On the day of the
murder, appellant was out-of-range of his monitoring system for several parts of the day. 
He had received permission from his parole officer to go to work that day, but he failed to
show up for work.

 Appellant's version of the events of May 13, 2000, differ substantially. Appellant
said he was picked up early that morning by Flora Gonzalez, the mother of his two children,
and her boyfriend. Together, they went back to Ms. Gonzalez's house where they had a
family barbecue so appellant could spend time with his kids. Rosendo was to pick up the
Taurus sometime during the day to have it repaired. After he learned from the police that
the Taurus was involved in the crime, appellant became upset at Rosendo. Appellant fled
town the next day because he feared an arrest warrant would be issued since he was not
at his apartment during the time he was being questioned at the police station.

B. Corroboration of Accomplice Witness Testimony


 In his first issue, appellant contends the record evidence is insufficient to
corroborate the testimony of accomplice witness Rosendo Martinez.

 A conviction cannot stand on accomplice testimony unless it is corroborated by
other evidence tending to connect the defendant with the offense committed. Tex. Code
Crim. Proc. Ann. art. 38.14 (Vernon 1979). In order to determine whether the accomplice
testimony is corroborated, we eliminate all accomplice evidence and determine whether
the other inculpatory facts and circumstances in evidence tend to connect the appellant to
the offense. McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997); Hernandez v.
State, 52 S.W.3d 268, 279 (Tex. App.-Corpus Christi 2001, no pet.). The accomplice
witness testimony need not be corroborated on every element of the offense. Vasquez v.
State, 56 S.W.3d 46, 48 (Tex. Crim. App. 2001); Hernandez, 52 S.W.3d at 279. The non-accomplice testimony does not have to directly link the appellant to the crime, nor does it
have to establish his guilt beyond a reasonable doubt; but rather, the non-accomplice
evidence merely has to tend to connect appellant to the offense. McDuff, 939 S.W.2d at
613; Hernandez, 52 S.W.3d at 279. There must simply be some non-accomplice evidence
which tends to connect appellant to the commission of the offense alleged in the
indictment. McDuff, 939 S.W.2d at 613. All of the surrounding facts and circumstances
may be looked to for corroboration, and the corroborative evidence may be circumstantial
or direct. Brown v. State, 672 S.W.2d 487, 488 (Tex. Crim. App. 1984).

 In the instant case, appellant was an admitted member of the Mexican Mafia. 
Testimony from Raul Solis that appellant stabbed him in the eye and back for refusing to
carry out a request from the Mexican Mafia is sufficient to establish that appellant had
carried out criminal acts for the Mexican Mafia in the past. See Hernandez, 52 S.W.3d at
280 (where engaging in criminal activities for a gang may tend to connect one to the crime
being prosecuted).

 Furthermore, it was established that on the morning of May 13, 2000, appellant had
control over the Ford Taurus used in the commission of the murder. Whether or not
appellant was unaware that Rosendo picked up the car and used it for a criminal purpose,
is mere speculation. What is undisputed, however, is that appellant was the last person
to have control over the Taurus. His connection to and control over the vehicle that was
used in the offense tends to connect him to the crime. See Granger v. State, 683 S.W.2d
387, 393 (Tex. Crim. App. 1984).

 Further connecting appellant to the murder was the fact that during the time the
murder was occurring, appellant was absent from his apartment, in violation of a condition
of his parole. Appellant claimed he was at a family barbecue spending quality time with
his children. However, the persons able to confirm appellant's alibi, Ms. Gonzalez and her
boyfriend, failed to do so. Appellant himself seemed vague and unsure of his story when
initially questioned by police regarding his whereabouts during the time of the murder,
elaborating no further than stating he was with "a girlfriend." Appellant's unexplained,
unauthorized absence at the time of the murder further tends to connect him to the crime.

 Appellant's actions after the murder further create inferences tending to connect him
to the crime. (1) His admitted flight to San Antonio the day after the murder constitutes
suspicious conduct and can corroborate the testimony of an accomplice. See Cawley v.
State, 310 S.W.2d 340, 342 (Tex. Crim. App. 1957). Appellant's excuse that he fled in fear
of being arrested for a parole violation seems to contradict his testimony that he spent the
day with his children. His parole officer testified that during the week he was gone,
appellant did not establish personal contact. The only attempt made was by appellant's
girlfriend, who said appellant was planning to give himself up. However, that never
occurred. Thus, it is unlikely that appellant's only reason for remaining in hiding was fear
that a warrant would be issued for violating his parole because he was questioned at the
police station, when appellant made no effort to contact his parole officer.

 We conclude that appellant's acts before, during and after the commission of the
murder tend to connect him to the crimes committed. Taken together, the evidence
establishes that appellant engaged in criminal activities as a member of the Mexican Mafia,
specifically, the planned murder of Raul Pena. The evidence tends to connect appellant
to Pena's murder and the ongoing criminal activities of the Mexican Mafia. Accordingly,
we hold there is sufficient non-accomplice evidence corroborating the testimony of
accomplice witness Rosendo Martinez. Appellant's first issue is overruled.

C. Improper Jury Argument


 In his second issue, appellant contends the prosecutor's closing arguments during
the punishment phase of the trial constituted reversible error.

 During the punishment phase of the trial, the prosecutor argued, in relevant part, as
follows:

Prosecutor: Really, there is nothing to be proud of. Hitting
somebody while they are not expecting it by
surprise, only a sick mind would be proud of
something like that. Getting in an airplane and
flying it into a building when nobody is expecting
it and killing thousands of people, nobody would
be proud of that. Nobody should be proud of
that. It's unexpected. It's horrible. That's what
happened September 11th. Then you hear an
audio tape of Osama bin Laden laughing about
it and cackling, pretty much like we heard a little
while ago, laughing and cackling about
something-

 

Appellant's Counsel: Your Honor, I object to him comparing my client
to Osama bin Laden. I request a mistrial.


The Court: Sustained. Overruled as to the mistrial.


Appellant's Counsel: I ask the Court to instruct the jury to disregard.


The Court: The Court is going to instruct the jury to
disregard the last comments made by counsel.


Appellant's Counsel: Once again, I request a mistrial.


The Court: Overruled. Denied.


Prosecutor: Whatever you call it, whether it's Mexican Mafia
or al-Qaida, it's all the same; they are trying to
destroy this country a little at a time either by
killing thousands of people or killing one at a
time.


Appellant's Counsel: Once again, Your Honor, I object to the
prosecutor comparing this case to the events in
New York on September 11th, and I ask for a
mistrial.


The Court: Let's move on from that line of questioning. That
motion for mistrial is denied. Not the line of
questioning, line of comments.


 The four identified areas of acceptable jury argument are: (1) summation of the
evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing
counsel; and (4) plea for law enforcement. Rocha v. State, 16 S.W.3d 1, 21 (Tex. Crim.
App. 2000); Stell v. State, 711 S.W.2d 746, 748 (Tex. App.-Corpus Christi 1986, no pet.). 
It has long been established that a prosecutor cannot use closing argument to place
matters before the jury that are outside the record and prejudicial to the accused. Everett
v. State, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986). Arguments referencing matters that
are not in evidence and may not be inferred from the evidence are usually, "designed to
arouse the passion and prejudices of the jury and as such are highly inappropriate." Borjan
v. State, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). In examining challenges to jury
argument, an appellate court considers the remark in the context in which it appears. 
Gaddis v. State, 753 S.W.2d 396, 396 (Tex. Crim. App. 1988).

 It is well-settled that even if a prosecutor's jury argument is improper, an instruction
by the trial judge to the jury to disregard the improper argument is usually sufficient to cure
the error. Melton v. State, 713 S.W.2d 107, 114 (Tex. Crim. App. 1986); Logan v. State,
698 S.W.2d 680, 682 (Tex. Crim. App. 1985). Even when arguments exceed the
boundaries of these permissible groups, they will not constitute reversible error unless they
are extreme or manifestly improper, violate a mandatory statute, or inject new facts harmful
to the accused into the trial proceeding. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.
Crim. App. 2000); Reed v. State, 991 S.W.2d 354, 362-63 (Tex. App.-Corpus Christi 1999,
pet. ref'd). Reversible error occurs when a statement is so inflammatory that its prejudicial
effect cannot reasonably be removed by such admonition. McKay v. State, 707 S.W.2d
23, 33 (Tex. Crim. App. 1985); Blansett v. State, 556 S.W.2d 322, 328 (Tex. Crim. App.
1977). The improper remarks must have been a willful and calculated effort on the part of
the State to deprive appellant of a fair and impartial trial. Wesbrook, 29 S.W.3d at 115.

 Here, the prosecutor made a direct comparison between the accused and a present-day notorious criminal whose vile and dastardly acts were undoubtedly still fresh in the
minds of the jurors. Comparing an accused or his acts to those of a notorious criminal is
considered an improper and erroneous interjection of facts not in the record that is harmful
to the accused. Stell, 711 S.W.2d at 748 (comparing the accused to Lee Harvey Oswald);
Brown v. State, 978 S.W.2d 708, 714 (Tex. App.-Amarillo 1998, pet. ref'd) (comparing
accused to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy). While invoking horrific
memories of the events of September 11 in the minds of the jurors, the prosecutor's
argument effectively asked the jury to punish appellant as they would punish Osama bin
Laden. We see no plausible reason for the harmful remarks other than to deprive
appellant of a fair and impartial trial. See Wesbrook, 29 S.W.3d at 115. We conclude that
such an improper interjection of facts outside the record, which were harmful to the
accused, so inflamed the jury that its prejudicial effect could not reasonably be removed
by the trial court's admonition. See McKay, 707 S.W.2d at 33; Blansett, 556 S.W.2d at
328. Accordingly, we hold that the prosecutor's improper comparison between appellant
and Osama bin Laden was improper and the trial court's admonition could not cure the
error.

 After finding that argument is improper, this Court must conduct a harm analysis. 
See Wilson v. State, 938 S.W.2d 57, 61 (Tex. Crim. App. 1996). To measure the harm
resulting from improper jury argument, we employ Rule 44.2(b). That rule provides that
any non-constitutional "error, defect, irregularity, or variance that does not affect substantial
rights must be disregarded." Tex. R. App. P. 44.2(b). A substantial right is affected when
an error has a substantial, injurious effect or influence in determining the jury's verdict. 
King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

 In determining harm under this standard in improper argument cases, the appellate
court should consider the following factors: (1) severity of the misconduct (prejudicial
effect); (2) curative measures; and (3) the certainty of the punishment assessed absent the
misconduct. Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000); Mosley v.
State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). The prejudicial effect of the
prosecutor's improper remarks in the present case had more than a nominal effect upon
the jury. Because the jury assessed two sentences of life imprisonment, we cannot say
that the prosecutor's remarks had little impact on the jury's verdict.

 The State's comparison of appellant with Osama bin Laden and al-Qaida with the
Mexican Mafia appears to be nothing more than a blatant attempt to deprive appellant of
a fair and impartial trial. We see no logical reason for the State to compare the Mexican
Mafia with al-Qaida, especially after the trial court had disapproved of the prosecutor's
comparison of appellant with Osama bin Laden. We consider it highly likely that Osama
bin Laden and al-Qaida were chosen by the prosecutor because of the likelihood that such
references would stir up anger and resentment in the hearts of jury, especially considering
the fact that appellant's trial occurred seven months after September 11th. When a jury
is entrusted with deciding the severity of punishment for an accused, it should be allowed
to do so without allusions to the most evil and notorious criminals of the time.

 Second, as we have already discussed, the trial court's curative instruction could not
alleviate the argument's prejudicial effect. We recognize that the prosecution abandoned
the line of comments after the second analogy was objected to and the prosecutor was
instructed to move away from such comments by the trial judge. Yet there was no time for
the harmful impact of these statements to be attenuated over the course of the trial or
sentencing hearing. See Reed, 991 S.W.2d at 365 (improper remarks made immediately
before jury deliberation); Brown, 978 S.W.2d at 715 (same).

 We cannot say with absolute certainty what the jury's verdict on punishment would
have been absent the improper remarks. However, the jury's assessment of the maximum
sentence for each offense charged militates toward a finding of harm. Because we cannot
say with confidence that the error stemming from the improper argument had no influence,
or only a slight influence, on the punishment assessed, we hold that the prosecution's
argument was improper and harmful. Appellant's second issue is sustained.

D. Recusal of Prosecutor's Office


 In his third issue, appellant complains the trial court erred in denying his request to
recuse the prosecutor's office. Appellant contends the trial court should have recused the
entire prosecutor's office because the district attorney made a public statement of support
for a member of his office, which allegedly compromised his impartiality and indicated his
personal bias against appellant.

 There are times when a prosecutor must recuse himself from a prosecution. If there
is a conflict of interest on the part of the prosecutor's office, the responsibility of recusal lies
with the State, not the trial court. State ex rel. Eidson v. Edwards, 793 S.W.2d 1, 6 (Tex.
Crim. App. 1990). Only when a conflict of interest rises to the level of a due process
violation can the trial court disqualify a district attorney or his staff. State ex rel. Hill v.
Pirtle, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994).

 During the recess between the guilt-innocence phase and the punishment phase
of the trial, appellant physically assaulted the assistant district attorney prosecuting this
case. The elected District Attorney, Carlos Valdez, replaced the assaulted prosecutor and
personally argued the punishment phase of the trial. Appellant complains of a statement
that Valdez made to the press after the courtroom attack. Valdez stated: "[a]ny attack on
anybody in my office or any of the personnel in my office, I consider a personal attack
against me." Appellant contends this statement warrants the requested recusal.

 Appellant has presented this Court with no authority suggesting that such a
statement rises to the level of a due process violation. No more can be read into the
comment than a district attorney showing solidarity and support for his staff.

 Moreover, appellant should not be allowed to create a conflict during the course of
the trial, and then on appeal complain of an error which he himself induced. See Prystash
v. State, 3 S.W.3d 522, 531 (Tex. Crim. App. 1999); Pedraza v. State, 69 S.W.3d 220, 224
n.3 (Tex. App.-Corpus Christi 2001, no pet.). Appellant's third issue is overruled.

 We affirm the trial court's judgment finding appellant guilty of the offenses of murder
and engaging in organized criminal activity. We reverse both sentences of life
imprisonment and remand the case to the trial court for a new trial on punishment. See
Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 2003).


 FEDERICO G. HINOJOSA

 Justice



Publish. See Tex. R. App. P. 47.2(b).


Opinion delivered and filed this the

28th day of August, 2003.

1. Acts committed after the offense is completed cannot make one a party to the offense. Morrison
v. State, 608 S.W.2d 233, 235 (Tex. Crim. App. 1980). However, acts committed before, during and after the
offense may be considered by the court in deciding whether a defendant participated in a common scheme
for purposes of party liability. Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).