COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| ALEJANDRO MARTINEZ, | § | |
| | | No. 08-15-00124-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 384th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20100D06101) |
| | § | |

# **O P I N I O N**

Alejandro Martinez was convicted by a jury of two counts of sexual assault, and was sentenced to two concurrent eight-year prison terms. Appellant argues on appeal that the prosecutor engaged in improper jury arguments, as well as prosecutorial misconduct by intentionally placing the victim in the courtroom and allowing her to cry during closing arguments. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

After going to a bar in El Paso with a group of friends on the evening of April 13, 2010, the victim in this matter, Diandra Baca, who was twenty years old at the time, went to a home belonging to the parents of one of her friends. Baca, who was admittedly intoxicated, become involved in a heated argument with her friend's parents, who ultimately directed her to leave the

house at approximately 2 a.m. the next morning.[1]   Baca had lost her cell phone and was unable to call for help.  She walked away from the house, and approximately an hour later, encountered Appellant, who was out jogging with his dog.  After Baca advised Appellant of what had occurred, he offered to give her a ride home.

According to Baca, after leaving and returning with a truck, Appellant drove her into the desert, where he tried to kiss her.   When Baca rejected his advances and tried to push him away, Appellant slapped her, and then directed her to perform oral sex.   Baca replied that she would do so if he refrained from hitting her again.   While performing oral sex on him, Appellant held her by the back of her hair.   Afterward, Appellant informed Baca that he intended to have sexual intercourse with her. When she initially refused, Appellant once again hit her in the face, and forcibly held her down by the throat while he penetrated her.

As Appellant walked back to his truck, Baca ran off toward the freeway, twisting her ankle as she ran.   When she reached the freeway, she obtained assistance from a truck driver who was passing by.   The truck driver called 911 on Baca's behalf, and thereafter took her to a gas station where she was taken to the hospital by ambulance.   At the hospital, an examination by a sexual assault nurse examiner (SANE nurse) revealed that Baca had an abrasion on the left side of her neck, a bruise on her right upper arm, and abrasions on both knees.   A police detective who interviewed Baca in the emergency room on the morning of the assault testified that she observed that Baca had redness in her neck, ear, and back; injuries to her face; blood on her knee; swelling

---

[1] Baca reported that during the argument her friend's father grabbed her by the neck, and her friend's mother pushed her before she left the house.

2

in one of her ankles; and her blouse and jeans were torn.[2]  At trial, Baca testified that her injuries were caused by Appellant, and that he had ripped her blouse during their encounter.[3]

The SANE Nurse's examination did not reveal any injuries to Baca's genitals, but she explained at trial that this was not inconsistent with a sexual assault, and that most of the sexual assault victims she had examined did not have injuries of that nature.  The examination also revealed that Baca had sperm present on her abdomen, face, and shirt.  Subsequent testing determined that the sperm was consistent with a DNA swab taken from Appellant.

Baca admits that when she was first interviewed by the detective in the emergency room, she falsely told the detective that she had been given a ride home from her friend's house by another friend who had been at the home that morning, and that he was responsible for the assault.[4] However, the detective later interviewed another friend who had been at the home that day.  She contradicted that claim and the detective interviewed Baca a second time on April 19, 2010. During the second interview, Baca recanted her first statement, explaining that she made the initial false statement because she was "ashamed" to admit she had gotten into a car with a stranger, and because she felt "stupid" for having done so.  Baca then described her encounter with Appellant, providing a description of both Appellant and his dog, and informed the detective of the time and location where she had encountered them on the morning in question.

---

[2]  Baca's injuries and the damage to her clothes were also depicted in photographs that were introduced into evidence at trial.

[3]  Baca testified that her friend's mother had partially torn her blouse during their argument, but that Appellant had torn it more during their encounter.

[4]  The truck driver who picked up Baca testified that Baca also told him that she had been assaulted by a friend who was driving her home after a party.  At trial, Baca acknowledged that she told the truck driver that she knew her assailant, but claimed that she did not mean to indicate that she was friends with her assailant, only that she knew him in the sense that she would be able to later identify him.

After receiving this new information, the detective set up surveillance in the area during the early morning hours of April 28, 2010, on the same day of the week that the assault occurred. During their surveillance, the detective observed Appellant out walking his dog at the same approximate time that Baca reported encountering Appellant two weeks earlier. Baca subsequently identified Appellant as her assailant in a photo lineup, and after his DNA matched the sperm found on Baca's body, Appellant was arrested and charged with two counts of sexual assault.[5]

At trial, Appellant, who was 48 years old at the time of the incident, admitted he had a sexual encounter with Baca on the morning in question, but claimed that it was consensual in nature. Appellant recalled encountering Baca while walking his dog before work, and testified that Baca was visibly intoxicated and upset. In addition, he observed that her clothes were torn, and that her face and neck were red. According to Appellant, he agreed to Baca's request to give her a ride home, but during the drive, Baca became "affectionate and amorous" with him, and the two began kissing. Appellant claimed that after Baca began "fondling" him, he drove his vehicle into the desert and the two of them exited the truck, after which Baca performed oral sex on him in a consensual manner. Appellant testified that he ejaculated within a few minutes, and got back into the truck, but Baca abruptly left the area. After unsuccessfully looking for Baca, he drove off without her, as he needed to get ready for work. Appellant denied having sexual intercourse

---

[5] The first count in the indictment alleged that Appellant sexually assaulted Baca by intentionally and knowingly causing the penetration of her mouth with his sexual organ by use of physical force and violence, and the second count alleged that he sexually assaulted Baca by intentionally and knowingly causing the penetration of her sexual organ with his sexual organ by use of physical force and violence.

with Baca, and further denied hitting her and/or engaging in any act of violence towards her during their encounter.

Following trial, the jury convicted Appellant of both counts of sexual assault as alleged in the indictment, and sentenced him to two eight-year concurrent prison terms. This appeal followed.

## ALLEGEDLY IMPROPER ARGUMENTS AND CONDUCT AT TRIAL

In a single issue, Appellant argues that the prosecutor engaged in "improper and egregious arguments and conduct" during closing arguments, which deprived him of his right to a fair trial by an impartial jury, and that the "inflammatory" and prejudicial nature of the prosecutor's conduct necessitates reversal of his conviction. Interwoven into this argument is Appellant's contention that the trial court erred in denying two requests for a mistrial, which were based on the prosecutor's alleged misconduct.

### *Standard of Review and Applicable Law*

The purpose of closing argument is to facilitate the jury's analysis of evidence presented at trial to arrive at a just and reasonable conclusion based on the evidence alone and not on facts that were not admitted into evidence. *Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). Proper jury argument includes four areas: (1) summation of the evidence presented at trial, (2) reasonable deduction drawn from that evidence, (3) answers to the opposing counsel's argument, or (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000) (citing *McFarland v. State*, 845 S.W.2d 824,844 (Tex.Crim.App. 1992)). In determining whether a prosecutor's statements were improper, we consider the remark in the context in which it appears, examining the "entire argument, not merely isolated sentences."

5

*Robbins v. State,* 145 S.W.3d 306, 314-15 (Tex.App.--El Paso 2004, pet. ref'd) (citing *Rodriguez v. State,* 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd); *see also Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). To constitute reversible error, the prosecutor's argument must have been manifestly improper or inject new, harmful facts into the case. *Jackson,* 17 S.W.3d at 673-74; *see also Borjan v. State,* 787 S.W.2d 53, 56-57 (Tex.Crim.App. 1990) (an improper argument constitutes reversible error when, in light of the record as a whole, it is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceedings).

When the trial court denies a motion for mistrial based on an improper jury argument, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex.Crim.App. 2004). "In reviewing a trial court's ruling on a motion for mistrial, an appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Archie v. State,* 221 S.W.3d 695, 699 (Tex.Crim.App. 2007). "'Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.'" *Id.* (quoting *Hawkins,* 135 S.W.3d at 77); *see also In Matter of E.O.E.,* 508 S.W.3d 613, 624 (Tex.App.--El Paso 2016, no pet.). In determining whether the trial court abused its discretion by denying a motion for mistrial based on an improper jury argument, we apply the so-called "*Mosley*" test, and balance the following three factors: " 1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); 2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and 3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *See Archie*, 221 S.W.3d at 700 (noting that whether a mistrial should have been granted involves most,

6

if not all, of the same considerations that attend a harm analysis); *see also Hawkins,* 135 S.W.3d at 77.

A mistrial is only appropriate for "highly prejudicial and incurable errors." *Simpson v. State,* 119 S.W.3d 262, 272 (Tex.Crim.App. 2003). Even when a prosecutor has made an improper jury argument, an instruction to the jury to disregard an improper jury argument is generally sufficient to cure all but the most blatant of comments. *Shannon v. State,* 942 S.W.2d 591, 597 (Tex.Crim.App. 1996); *Brown v. State,* 92 S.W.3d 655, 668 (Tex.App.--Dallas 2002), *aff'd,* 122 S.W.3d 794 (Tex.Crim.App. 2003); *see also Hawkins,* 135 S.W.3d at 77 (a mistrial will only be required in those extreme circumstances where the prejudice cannot be cured by an instruction). Whether an instruction to disregard an improper jury argument cured the error, and whether the motion for mistrial should have been granted, requires us to determine beyond a reasonable doubt if a prosecutor's improper comment contributed to his conviction. *See Cintron v. State,* No. 08-05-00176-CR, 2006 WL 2516516, at *2 (Tex.App.--El Paso August 31, 2006, no pet.) (not designated for publication) (citing *Brown v. State*, 92 S.W.3d 655, 668 (Tex.App.--Dallas 2002), *aff'd*, 122 S.W.3d 794 (Tex.Crim.App. 2003); TEX.R.APP.P. 44.2(a); *Hough v. State*, 828 S.W.2d 97, 100 (Tex.App.--Beaumont 1992, pet. ref'd)). We examine each of the complained-of comments with the above standards in mind.

### Baca's Credibility

During her testimony, Baca acknowledged that she had made a mistake by voluntarily getting into a car with a stranger, testifying that she felt "ashamed" and "stupid" for doing so. During closing arguments, the State's prosecutor summarized Baca's testimony on this point, and then asked the jurors if any of them had ever made "dumb mistakes" in their lives, and if they

7

could "find it in [their] heart[s] to forgive Diandra Baca for [her] mistake…." Defense counsel objected, asserting that the prosecutor's comments about forgiving Baca were "argumentative."[6] After the trial court overruled the objection, the prosecutor again asked the jurors if they could look "past" Baca's mistake, and urged them to "focus on what happened in the middle of that desert back in April of 2010?" Appellant contends on appeal that the prosecutor's comments were improper because they were calculated to "make [Baca] a credible witness."

There are several problems with Appellant's argument. First, as the State points out, Appellant did not object on this basis at trial, and instead only made the general objection that the prosecutor's question to the jury was "argumentative." To preserve an issue for appeal, a timely objection must be made that states the specific ground for the objection, if the specific ground is not apparent from the context. *See* TEX.R.APP.P. 33.1; *Buchanan v. State,* 207 S.W.3d 772, 775 (Tex.Crim.App. 2006). The two main purposes of requiring a specific objection are to inform the trial judge of the basis of the objection so that he has an opportunity to rule on it, and to allow opposing counsel and/or the trial court to remedy the error. *See Clark v. State,* 365 S.W.3d 333, 339 (Tex.Crim.App. 2012); *Reyna v. State*, 168 S.W.3d 173, 179 (Tex.Crim.App. 2005). A complaint will not be preserved for appeal if the legal basis of the complaint raised on appeal varies from the objection made at trial. *See Clark*, 365 S.W.3d at 339-40 (an objection at trial that a prosecutor's questions were badgering and "argumentative" did not preserve the defendant's due process argument for purposes of appeal); *Reyna*, 168 S.W.3d at 179 (a defendant's hearsay objection does not preserve error on Confrontation Clause grounds).

---

[6] Appellant did not request a mistrial based on this comment.

Moreover, even if we were to conclude that Appellant made a sufficient objection to the prosecutor's comment, we disagree with Appellant's argument that the prosecutor's comment was improperly calculated to vouch for Baca's credibility. We recognize that in general, a prosecutor may not express her personal opinion regarding the credibility of a witness. *See Menefee v. State,* 614 S.W.2d 167, 168 (Tex.Crim.App. 1981) (prosecutor's statement regarding State's witness that he had never "seen anybody that I thought was any more honest than she is," was an improper expression of the prosecutor's opinion of the witness's credibility); *see also Robillard v. State,* 641 S.W.2d 910, 912 (Tex.Crim.App. 1982) (prosecutor improperly bolstered the credibility of a written statement by asserting his personal belief in its veracity). However, a prosecutor may argue her opinion regarding a witness's credibility if the opinion is based on reasonable deductions from the evidence and does not constitute unsworn testimony. *See McKay v. State,* 707 S.W.2d 23, 37 (Tex.Crim.App. 1985); *see also Gonzalez v. State,* 337 S.W.3d 473, 483 (Tex.App.-- Houston [1st Dist.] 2011, pet. ref'd). Therefore, although a prosecutor may not go outside the record to bolster the credibility of a witness, if a statement is based upon an analysis of the evidence and is based on a reasonable deduction therefrom, the statement does not constitute improper argument. *See Robbins v. State*, 667 S.W.2d 318, 322–23 (Tex.App.--El Paso 1984, pet. ref'd) (citing *Collins v. State,* 548 S.W.2d 368 (Tex.Crim.App. 1976)); *see also Hinojosa v. State,* 433 S.W.3d 742, 763 (Tex.App.--San Antonio 2014, pet. ref'd) (proper jury arguments may include argument as to the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable deductions from such evidence).

In the present case, the prosecutor did not offer her personal opinion of Baca's credibility. Instead, the prosecutor summarized Baca's testimony in which she acknowledged that she had

9

made a mistake by getting into a car with a stranger, and then asked the jurors if they would be able to overlook that mistake, and to convict Appellant based on the evidence presented at trial. The prosecutor did not go outside the record in asking that question, nor did she inject any new facts in doing so. Instead, the argument was a proper plea to law enforcement, asking the jury to convict the defendant of sexual assault, regardless of the mistakes that Baca admittedly made on the evening in question. Accordingly, we find that this line of argument was not improper.

## The Prosecutor's Comments Referring to Baca's Truthfulness

In a similar argument, Appellant complains that the prosecutor made additional improper comments during her closing argument in which she expressed her personal belief that Baca was telling the truth during her testimony. As the State points out, however, Appellant does not identify any such comments in his brief, and therefore this issue is inadequately briefed. *See generally Narvaiz v. State*, 840 S.W.2d 415, 430 (Tex.Crim.App. 1992), *cert. denied*, 113 S.Ct. 1422 (1993) (when a defendant fails to point to any place in the record showing where the alleged error occurred, any error is waived due to inadequate briefing); TEX.R.APP.P. 38.1(g) (a brief must state facts pertinent to the issues presented and must be supported by record references).

Further, even if we were to consider this issue, we would not find that the prosecutor engaged in any improper jury arguments with regard to Baca's truthfulness. Our review of the record reveals that the prosecutor made the following references during her closing argument:

(1) After describing the accuracy of Baca's testimony regarding the location where she encountered Appellant, the prosecutor stated: "Ms. Baca was telling you the truth."

(2) After describing various inconsistencies in Appellant's testimony, the prosecutor stated: "I want you to remember Ms. Baca's demeanor up there, and I want you to remember who looked you in the eye, who told you the truth. Ms. Baca."

10

(3) After recalling Baca's explanation for why she initially lied to the detective regarding the identity of her assailant, the prosecutor stated:    "She blamed herself -- as many victims do -- and she felt ashamed. But she got up there on the witness stand and told you the truth, and that's what matters."[7]

These comments were all made in the context of describing Baca's testimony and her demeanor, and therefore did not constitute improper jury argument.  *See Good v. State,* 723 S.W.2d 734, 736 (Tex.Crim.App. 1986) (a prosecutor may allude to the demeanor of a testifying witness during closing argument, so long as the jury had the same opportunity to observe the demeanor during the witness's testimony); *see also Hinojosa v. State,* 433 S.W.3d 742, 763 (Tex.App.--San Antonio 2014, pet. ref'd) (proper jury arguments may include argument as to the truthfulness of a witness's testimony so long as the argument is based on the evidence presented and reasonable deductions from such evidence, including the complainant's demeanor while testifying); *Mock v. State*, 848 S.W.2d 215, 222 (Tex.App.--El Paso 1992, pet. ref'd) (prosecutor's argument urging the jury to consider the defendant's demeanor while he was making closing arguments was not improper jury argument).

### The Prosecutor's Comment Regarding her "Gut Reaction" to Baca's Testimony

During his closing argument, defense counsel pointed out that Baca had initially lied to the detective about the identity of her assailant, and further argued that Baca's testimony generally had "inconsistencies and lies to it[.]"   In response, the prosecutor reminded the jury of Baca's testimony in which she explained her reasons for providing an inconsistent story to the detective, i.e., because she did not want the detective, or her parents, to think that she was "stupid" for getting into a car with a stranger.   The prosecutor followed this up by saying:

---

[7] We also note that Appellant did not make a proper objection to any of those comments, nor did he request a mistrial based on the comments.

11

> Well, I want you-all to think about what your gut reaction is when she said that on the stand. I know what my gut reaction is when she told me that. 'Ahh, that wasn't a good idea.' You-all thought that--

Defense counsel objected that the prosecutor could not testify "to what she believes or what her reaction is," but the trial court overruled his objection. The prosecutor then finished her thought by focusing on what she believed would be the jurors' negative reaction to Baca's conduct on the morning of her assault, and then argued that merely because Baca made a "dumb" mistake in getting into Appellant's car, this did not mean that "she deserved to get raped." On appeal, Appellant argues that the prosecutor's statement was an impermissible expression of her personal opinion about an issue in the case. We disagree.

Although Appellant is correct in pointing out that a prosecutor is generally prohibited from expressing a personal opinion regarding a contested issue in a case, a prosecutor is nevertheless permitted to refer to the evidence presented at trial, and to express an opinion based on an analysis of that evidence, so long as the prosecutor's comment does not constitute unsworn testimony. *See Wolfe v. State*, 917 S.W.2d 270, 281 (Tex.Crim.App. 1996); *Robbins,* 667 S.W.2d at 322–23 (if a statement is based upon an analysis of the evidence and is a reasonable deduction therefrom, the statement does not constitute improper argument). In the present case, the prosecutor's comment regarding her "gut reaction" was expressly made in reference to Baca's testimony regarding the admittedly poor decisions she made on the morning of the assault, by getting into a stranger's car and later lying to the police about the identity of her assault. Further, in making this comment, the prosecutor was not expressing a personal opinion about a contested issue in the case, as neither party disputed the fact that Baca voluntarily got into Appellant's car and later lied to police about the identity of her assailant. The point of her argument was once again to point out that although

12

Baca clearly made poor decisions on the morning in question, this did not mean that she deserved to be assaulted. When viewed in this context, we conclude that the prosecutor's argument was based on a reasonable deduction from the evidence, and did not constitute an improper jury argument.

## Baca's Conduct in the Courtroom

During his closing arguments, defense counsel asked to approach the bench, and objected that Baca was in the courtroom "sobbing like crazy," which he believed was "disruptive." During their bench conference, the prosecutor offered to have another ADA "let her know," presumably meaning that she would alert Baca to the fact that she was allegedly being disruptive. Before any corrective measures could be taken, however, defense counsel, moved for a mistrial on the basis that Baca's conduct was "creating prejudice to this jury," alleging that she was "intentionally doing that." The trial court denied the motion, stating that he had no basis for knowing whether the conduct was intentional or not.

The record does not reflect whether Baca's allegedly disruptive conduct ceased after that time, but we do note that defense counsel made no further objections to Baca's conduct until after closing arguments ended and the jury had been sent to deliberate, when he renewed his motion for a mistrial, again arguing that Baca's conduct during closing arguments had been prejudicial and distracting to the jury. In denying the motion, the trial court stated that he had not "noticed" that Baca's conduct was disruptive, even though he had been in the courtroom throughout closing arguments.

On appeal, Appellant contends that the prosecutor engaged in a "calculated attempt to have [Baca] sit next to the jury box so they could see her emotional reactions (which turned out to be

13

inflammatory)[.]" This issue, however, was not properly preserved for appeal. Although in the trial court, Appellant accused Baca of intentionally crying in the courtroom, he did not accuse the State's prosecutor of intentionally engaging in any wrongdoing or misconduct, and he is therefore attempting to raise a new theory of error on appeal. *See Temple v. State*, 342 S.W.3d 572, 608 (Tex.App.--Houston [14th Dist.] 2010), *aff'd,* 390 S.W.3d 341 (Tex.Crim.App. 2013) (where defendant did not object on the basis of prosecutorial misconduct, he did not preserve that issue for appeal); *see also Hajjar v. State*, 176 S.W.3d 554, 566 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd) (defendant did not preserve issue of prosecutorial misconduct for appeal, where he failed to object on that theory at trial) (citing *Perkins v. State,* 902 S.W.2d 88, 96 (Tex.App.--El Paso 1995, pet. ref'd)).

Moreover, even if we were to consider this issue on appeal, there is nothing in the record to support Appellant's argument that the State's prosecutor made a calculated decision to place Baca near the jury box so that the jury could see her crying. At most, the record reflects that Baca was in the courtroom in the second row, that she may have been crying, and that the prosecutor agreed to have another ADA speak with her. If Appellant had wished to pursue a theory of prosecutorial misconduct, it was incumbent upon him to make a record to support that theory. Instead, there is simply no evidence in the record that the prosecutor was involved in intentionally disrupting the jury in this manner. *See Brown v. State*, 92 S.W.3d 655, 662 (Tex.App.--Dallas 2002), *aff'd,* 122 S.W.3d 794 (Tex.Crim.App. 2003) (trial court did not abuse its discretion in denying motion for mistrial, where witness cried on the stand and asked the jury to give his son justice, where there was no evidence that the prosecutor intentionally facilitated the witness's conduct); *Moreno v. State,* 952 S.W.2d 44, 47 (Tex.App.--San Antonio 1997, no pet.) (finding that

14

trial court did not abuse its discretion in denying motion for mistrial, where defendant's claim of prosecutorial misconduct was not substantiated by the record); *cf. Stahl v. State,* 749 S.W.2d 826, 828-30 (Tex.Crim.App. 1988) (reversible error occurred where record reflected that the prosecutor expected its witness to have an emotional outburst in court, in which the witness personally attacked the defendant, and later sought to "exacerbate its impact on the jury" referring to the outburst in jury argument).

And finally, in considering the objection and motion for mistrial that Appellant did make at trial, i.e., that Baca's conduct was so disruptive that it warranted a mistrial, we find nothing in the record to suggest that the trial court abused its discretion in denying the motion for a mistrial based solely on Baca's conduct. In general, conduct that interferes with the normal proceedings of a trial will not result in reversible error or warrant a mistrial, unless the defendant shows, by reasonable probability, that the conduct interfered with the jury's verdict. *See Landry v. State,* 706 S.W.2d 105, 112 (Tex.Crim.App. 1985) (reversal of defendant's conviction was not warranted where victim's family members gave emotional testimony and engaged in other verbal and non-verbal emotional outbursts during closing arguments, which necessitated removal of the jury, where there was no evidence that the conduct interfered with the jury's verdict); *see also Davis v. State,* No. 08-00-00107-CR, 2001 WL 925768, at *3 (Tex.App.--El Paso Aug. 16, 2001, no pet.) (not designated for publication) (trial court did not abuse its discretion in denying defendant's motion for mistrial, where defendant, who was accused of indecency with a child, did not articulate how there was a reasonable probability that teenage victim's conduct in running from the courtroom during final arguments interfered with the jury's verdict). In the present case, while Baca's conduct prompted an objection and a short bench conference, there is nothing in the record

to suggest that Baca's conduct interfered with the jury's verdict. To the contrary, as set forth above, once defense counsel lodged his objection, the prosecutor offered to immediately address the situation, and there is nothing in the record to suggest that Baca's allegedly disruptive conduct continued after that time. Further, in denying Appellant's motion for mistrial, the trial court stated that it had not "noticed" that Baca's conduct was in fact disruptive. Accordingly, we find no basis for concluding that the trial court abused its discretion in denying the motion for mistrial, or for reversing Appellant's conviction on this basis.

### The Reference to Ted Bundy

During his closing argument, defense counsel argued that Appellant was of good character, pointing out, among other things, that Appellant had held the same job for 25 years. During her closing argument, the prosecutor responded that defense counsel had "made a big deal about [Appellant's] character," and in particular, the fact that Appellant had held a job for several years. She then stated:

> So did Ted Bundy. It doesn't matter. You can have a job. It doesn't mean that you're….

Defense counsel objected that the prosecutor had made an "outrageous" comparison of Appellant to Ted Bundy, and then moved for a mistrial. The trial court sustained the objection, but did not rule on the motion for mistrial. Defense counsel then asked the court to instruct the jury to disregard the prosecutor's comment. In response, the trial court gave the following instruction to the jury: "Ladies and gentlemen, nothing the attorneys say is evidence. The evidence you hear that you will consider in your deliberation is what you heard from the witness stand. Proceed." Appellant did not object to the adequacy of the instruction or ask that the trial court give a different instruction to the jury.

16

On appeal, Appellant argues that the prosecutor engaged in a highly "inflammatory" and "egregious argument," as her argument allegedly compared him to the "most notorious, serial rapist in American jurisprudence." Appellant argues that because Ted Bundy was convicted of committing a series of sexual assaults, the comparison suggested that he had also committed multiple offenses, when in fact he had no prior convictions on his record and he was only being accused of assaulting a single victim. Appellant contends that the prosecutor's comment therefore went outside the scope of the evidence presented at trial, injected new facts into the proceedings, and went beyond merely responding to the statements made by defense counsel regarding his good character. And finally, Appellant contends that the comment was so highly inflammatory that it could not have been cured by a proper instruction to disregard, and that, in any event, the instruction actually given by the trial court did not properly advise the jury to disregard the prosecutor's comment.

As a preliminary matter, we agree with Appellant that it is improper for a prosecutor to make a direct comparison between a defendant's conduct and that of a notorious criminal, such as Ted Bundy, as doing so injects new facts not in evidence and serves to inflame the passions of the jury. *See Brown v. State,* 978 S.W.2d 708, 714 (Tex.App.--Amarillo 1998, pet. ref'd) (prosecutor's comments comparing accused to Jeffrey Dahmer, John Wayne Gacy, and Ted Bundy was "an improper and erroneous interjection of facts not in the record"); *see also Gonzalez v. State*, 115 S.W.3d 278, 284–85 (Tex.App.--Corpus Christi 2003, pet. ref'd) (prosecutor's direct comparison of defendant and Osama bin Laden was improper); *Stell v. State,* 711 S.W.2d 746, 748 (Tex.App.--Corpus Christi 1986, no pet.) (it was improper for the prosecution to compare the accused to Lee Harvey Oswald); *see also Rehm v. State,* 128 Tex. Crim. 59, 78 S.W.2d 983, 984–

17

85 (1935) (reversing conviction, where, among other things, the prosecutor compared the defendant's acts to those of Clyde Barrow and John Dillinger). However, when a prosecutor refers to a notorious individual in her argument, but does not make a direct comparison of the individual to the defendant, courts are less likely to find that the prosecutor's reference was either improper or harmful to the defendant's case. *See Luna v. State,* No. 08-13-00151-CR, 2015 WL 4572276, at *6 (Tex.App.--El Paso July 29, 2015, pet. ref'd) (not designated for publication) (trial court did not err in denying motion for mistrial where prosecutor merely asked the jury if they had heard of Bernie Madoff, and made no direct comparison of Madoff to the defendant); *see also Alford v. State*, No. 05-98-00262-CR, 2000 WL 175115, at *6-7 (Tex.App.--Dallas Feb. 16, 2000, no pet.) (not designated for publication) (prosecutor's statement that "Ted Bundy had a paper route when he was a boy," did not warrant reversal, where it was made in response to defense counsel's argument that defendant was hard-working, and was not meant to compare Bundy's conduct with that of the defendant); *Primes v. State,* 154 S.W.3d 813, 814-16 (Tex.App.--Fort Worth 2004, no pet.) (trial court did not abuse its discretion in denying the defendant's motion for a mistrial where prosecutor responded to the testimony of the defendant's family members regarding their love for the defendant by commenting that "Ted Bundy's mother loved him too," as the comment did not directly compare Bundy's actions to that of the defendant).

In the present case, the prosecutor made no direct comparison of Appellant's conduct to the serial rapes committed by Ted Bundy. Instead, she merely responded to defense counsel's argument that Appellant was of good character because he had held a job for several years by pointing out that even notorious criminals, such as Ted Bundy, have held jobs. We therefore

conclude that the comment was not so inflammatory or inherently prejudicial that it could not have been cured by an instruction to disregard from the trial court.

Moreover, although Appellant now complains that the trial court did not provide an adequate instruction to disregard the comment, the trial court did caution the jury that the prosecutor's comment did not constitute evidence that they could consider in their deliberations. Although the instruction may have been less than perfect, it effectively advised the jury that it could not consider the prosecutor's reference to Ted Bundy as evidence. If Appellant had wished for a more precise instruction to disregard the comment, it was incumbent upon him to request it. *See generally McGinn v. State,* 961 S.W.2d 161, 165 (Tex.Crim.App. 1998) (if a trial court sustains an objection to improper jury argument, the complaining party must request an instruction to disregard the argument in order to preserve error on appeal if an instruction to disregard could have cured the prejudice resulting from the argument).

And finally, we note that although the evidence in the present case was conflicting, the certainty of Appellant's conviction was high absent the prosecutor's statement. Appellant admitted to having a sexual encounter with Baca, and although Appellant contended that the encounter was consensual, there was substantial evidence that it was not consensual, including Baca's testimony regarding the forceful nature of the encounter, and the testimony that she arrived at the emergency room with visible injuries and torn clothing following the encounter.

We conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial, and that the prosecutor's reference to Ted Bundy in her closing argument does not warrant reversal of Appellant's conviction. We overrule Appellant's sole issue and affirm the judgment below.

ANN CRAWFORD McCLURE, Chief Justice

June 22, 2018

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)